## Mutual Ben. Health & Accident Ass'n v. Ramage.

March 12, 1943.

Bruce & Bullitt, Wm. Marshall Bullitt and R. Lee Blackwell for appellant.

Raymond B. Dycus for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

The appellee, George L. Ramage, recovered a verdict of $212.50 against the appellant, Mutual Benefit Health & Accident Association, hereinafter referred to as the company, for disability resulting from tuberculosis, and the company moves for an appeal under Section 21.060, KRS.

The policy sued on was issued and delivered to appellee on March 28, 1940, and contains a provision that it covers tuberculosis ''only if the disease originates after the policy has been in continuous force for the six preceding months.'' A similar provision was held valid in Equitable Life Assur. Soc. of U. S. v. Arrowood, 253 Ky. 456, 69 S. W. (2d) 984. It is admitted Ramage was completely disabled by reason of tuberculosis, thus we are confronted with a question of fact as to whether or not his tubercular condition originated before Sept. 28, 1940, the date the policy became effective as to that disease. It was stipulated that Ramage was not aware of any condition of ill health until a few days prior to Nov. 14, 1940, except commencing about Oct. 1st, of that year he became aware of a severe cold, cough, fever and a feeling of malaise.

The only witnesses testifying as to appellee's tubercular condition were Doctors Roy Waddell, Allen Shemwell and Palmer H. Reed. The former two examined him on Nov. 14, 1940, and the latter on Feb. 18, 1941. Dr. Waddell was appellee's family physician but had no X-ray machine and immediately after diagnosing the trouble as tuberculosis he sent the patient to Dr. Shemwell for confirmation. Dr. Shemwell X-rayed appellee's lungs and pronounced his trouble as tuberculosis, but testified his X-ray examination of Nov. 14th disclosed no cavities which he stated usually come in further advanced cases than the one appellee had. He further testified that it was difficult to determine the time required for the disease to reach the stage disclosed by his examination, but from the X-ray and from other examinations he made and the history of the case, he would say that it was one and a half months, and he thought appellee's tuberculosis originated from the attack of influenza (which was about Oct. 1, 1940). He testified he had seen patients die within a month from the time tuberculosis was contracted.

Dr. Waddell's testimony is confusing. In one part of it he gives as his opinion that Ramage had suffered from tuberculosis a month or six weeks before he examined him on Nov. 14th, and right afterwards he testified it was from three to five months. Evidently, he meant Ramage had a tubercular infection from three to five months before his examination, as he makes this latter statement in another place in his testimony and stated the medical profession draws a distinction between the infection and the disease. His testimony is that one may be infected with the tubercle bacillus and may have actual tuberculosis years later. Considering Dr. Waddell's testimony as a whole, we interpret it as giving his professional opinion that appellee's tubercular condition originated with a cold he had on or about Oct. 1, 1940.

Dr. Reed was positive in his testimony that from the rales appellee had when he examined him on Feb. 18, 1941, and from the "snowflake mottling" his X-ray showed in the upper half of both lungs, and from the cavities disclosed, that appellee's tubercular condition originated at least six months previously, which would be around the middle of August. This was before the expiration of the six months' waiting period on Sept. 28, 1940, and the company would not be liable under its policy.

There is a direct conflict in the medical testimony as to whether or not appellee's tubercular condition originated before Sept. 28, 1940, hence the trial judge correctly overruled the company's motion for a directed verdict and left that question for the jury's determination. Considering the facts disclosed by the stipulation and all the surrounding circumstances we may be inclined to agree with Dr. Reed that appellee's tuberculosis originated before Sept. 28, 1940, but we cannot usurp the province of the jury. Doctors Waddell and Shemwell base their expert opinions on facts which their examinations of the patient disclosed and it cannot be said their testimony is without probative value, or that the verdict is flagrantly against the evidence and it was reached as a result of passion or prejudice on the part of the jury. It is not difficult to catch the distinction the medical profession makes between the infection and the time tuberculosis originates. Under 'the wording of the policy the disease originates when it becomes active or there exists a distinct symptom or condition from which one learned in medicine can with reasonable accuracy diagnose the disease as tuberculosis.

Part "K" of the policy provides monthly benefits of $25 for total disability resulting from disease "which confines the insured continuously within doors and requires regular visits therein by legally qualified physician." Part "L" of the policy limits such payments to $12.50 per month for not exceeding three months where the disability "does not confine the insured continuously within doors but requires regular medical attention." Under "Additional Provisions (a)," the policy recites it does not cover disability while the insured "is not continuously under the professional care and regular attendance, at least once a week, beginning with the first treatment, of a licensed physician or surgeon, other than himself." The uncontradicted evidence is that appellee's disability continuously confined him "within doors," but that he was never visited by a physician at his home, on the contrary he visited the office of Dr. Waddell two or three times a month for treatment, later dropping his visits to the physician's office to about once a month.

The company insists that it was entitled to a peremptory instruction because appellee's tubercular condition originated prior to Sept. 28, 1940; but if the court

decided it was not entitled to a directed verdict, then under the provisions of the policy and the facts just enumerated in the preceding paragraph, appellee is limited in his recovery to $37.50 under part "L." Appellee asks for a liberal construction of the above quoted terms of the policy so as not to require weekly visits to his home by a physician as a condition precedent to his being entitled to full compensation for total disability.

It appears that this court has never spoken on the subject of whether such a provision in an accident and health policy requiring insured to be confined continuously within doors and to be visited weekly therein by a physician, as a condition precedent to full disability benefits, should be strictly or liberally construed. We approached very near it in Republic Life & Acc. Ins. Co. v. Gambrell, 248 Ky. 63, 58 S. W. (2d) 219, 220, in considering a policy similar to the one now before us when we said:

> "Under the confining sickness clause, to entitle the insured to indemnity as therein provided, three things must concur: (a) The sickness must be such as confines the insured continuously within doors; (b) require regular visits therein by a regular qualified physician; and (c) the sickness must be such as necessitates total disability and total loss of time."

The wording of the policy in the instant case is very plain and requires the insured to be confined within doors and to be visited therein at least once a week by a legally qualified physician to be entitled to full indemnity. In construing a policy similar to this one, the Supreme Court of Wisconsin in Reeves v. Midland Casualty Co., 170 Wis. 370, 174 N. W. 475, 476, 959, said:

> "He must not only be confined within the house, but he must be therein regularly and personally treated by a physician. Treatment at the physician's office was excluded as plainly and as definitely as it well could be. We speculate in vain for language that would more surely limit the period during which the insured was entitled to full indemnity to that period during which he was confined within the four walls of his house, and regularly and personally treated by a physician therein. To our

minds the language employed is not capable of a double meaning. It cannot be reasonably construed. to include time around the house, about the house, or when he was making trips to Polar and receiving treatment in the physician's office.''

See, also, Campana v. Ridgely Protective Ass'n, Sup., 186 N. Y. S. 82, where a similar provision in a policy was given this same construction. And 7 Couch Cyc. of Insurance Law, page 5798 says that the condition of a policy requiring insured to be regularly attended by a physician at his home is not met by visits to a physician's office. The Wisconsin case points out that the reason treatment by a physician at home might have been incorporated in the policy as a condition precedent to receiving full disability, is that such visits have a tendency to prevent malingering and to discourage a protracted illness. And the policy in the instant case pays twice as much where the insured's illness confines him within doors and he is visited therein at least once a week by a physician than where he is not so confined and is merely under a doctor's care. This shows the company realizes the insured's illness is much more expensive when he is visited weekly by his doctor and the policy makes allowance for such additional expense by doubling the benefit.

Appellee puts much reliance in National Acc. & Health Ins. Co. v. Mergenov, 49 Ohio App. 353, 197 N. E. 248, and American Casualty Co. v. Horton, Tex. Civ. App., 152 S. W. (2d) 395. The Mergenov case is easily distinguished from the instant one, as there the insured upon the advice of a physician was taken to the physician's office once each week for treatment by X-ray, which was impossible to give the patient at his home. Under such conditions the terms of the policy were met. In the Horton case it was held that such a provision in the policy is contrary to the public policy of the State of Texas. Our answer to that argument is simply that such provisions inserted in an insurance policy do not conflict with the public policy of Kentucky.

It is urged by appellee that the amount involved on this appeal is but $175, therefore we have no jurisdiction under Section 21.060, KRS. It is true we have no jurisdiction on an appeal from a money judgment less than $200. Appellee contends the company admitted it owed him $37.50 under part ''L'' of the policy which reduces

the amount in controversy from $212.50 to $175. However, the company did not admit liability for $37.50 but denied any liability to appellee on the ground that his tubercular condition originated before the policy became effective as to that disease; but if the court did not accept that view of the case, then it could only be liable for $37.50. The court correctly overruled the motion for a peremptory instruction; the jury rejected the contention that the company was only liable for $37.50; a judgment was entered against it for $212.50, which is the amount involved on this appeal and gives us jurisdiction.

For the reasons indicated the motion for the appeal is sustained. The appeal is granted and the judgment is reversed for proceedings in conformity herewith.