BANKERS SERVICE LIFE INSURANCE
COMPANY, a Corporation, Plaintiff
in Error,

v.

Pauline L. RITCHIE, Defendant in Error.

No. 38676.

Supreme Court of Oklahoma.

May 10, 1960.

Thomas E. Bennett, Oklahoma City, for plaintiff in error.

Lowell E. Clifton and J. F. Colson, Oklahoma City, for defendant in error.

PER CURIAM.

This is an appeal by Bankers Service Life Insurance Company, hereinafter called defendant, from judgment on verdict for Pauline L. Ritchie, hereinafter called plain-

tiff, in an action to recover benefits for nervousness, but had regular menstrual hospitalization and surgery resulting from disease, under provisions of a sickness and accident policy issued to plaintiff by defendant.

The policy contained a clause in Part 10, Limitations and Exclusions, in part, as follows:

"* * * any disease of the * * * female generative organs, shall be covered only if the cause thereof originates after this policy has been in force for six months or more."

The policy was issued effective March 20, 1957, and had been in force for six months on September 20, 1957.

Defendant contends that the cause of plaintiff's hospitalization and surgery was a disease of the female generative organs which originated prior to the date on which the policy became in force for six months, and that, therefore, defendant is not liable for any benefits under the policy.

The pertinent evidence is summarized, as follows:

 On August 14, 1957, plaintiff visited Dr. W., who diagnosed her condition as "marked infection of the cervix and mouth of the womb and menopause." He treated the cervicitis on the day of her visit, performing a coagulation in her cervix, and prescribed hormones for her menopause.

He next saw plaintiff on January 4, 1958. The history obtained was that she had experienced a heavy menstrual flow in November, 1957, and her complaints were pain in the chest, weakness, and shortness of breath. In view of her marked anemia and other physical findings, surgery was recommended and performed on January 16, 1958, consisting of a complete hysterectomy.

In a "Case Summary" dated January 15, 1958, (Defendant's Exhibit "2") Dr. W. stated, as follows:

"Mrs. Pauline Ritchie, was first seen on August 14, 1957, at age 42, divorced, and 2 children. She had a thyroidectomy in 1945, and a parathyroid operation in 1950. She complained of

nervousness, but had regular menstrual periods, of which she has had considerably heavier flow the past several months. She had lost 10–12 lbs., and had cramping in the feet at night, swelling of feet before menses, and headache and blind spots between periods. Lately she has been having some hot flashes. Her BP was 110/70, pulse 70 and regular, and examination was negative except the uterus was 1 time enlarged, and there was marked cervical disease. She had a radical electrocoagulation of the cervix and was given 1 cc of Depo-estradiol after each menses. Her symptoms completely disappeared for 2 months, but she again had considerable flow on October 28, and heavy flow in November. Her December menstrual period was 10 days late, beginning on January 4, with exceedingly heavy flow. Again she had swelling of the feet and legs, was quite pale, complained of marked fatigue, shortness of breath on climbing stairs, and dizziness. The cervical disease has been completely eradicated, however, the uterus remains 1 time enlarged. Her hemoglobin was 5.2, RBC 2.5M, on January 15, 1958.

"Impression: Endometrio polyp or submucuous myomata, and menopause, and sec. anemia.

"Enter St. Anthony hospital on January 16, 1958, for blood transfusions, and to have a pelvic cleanout and appendectomy on January 17, at 12:30 p. m.

"Dr. Doudna is anesthetist."

The Attending Physician's Statement completed by Dr. W. on February 3, 1958, contains the following:

"Diagnosis chronic cervicitis, cysts of ovaries, endometrium with edema, adhesions, appendicitis

"Symptoms fatigue, excessive flow (menstrual) swelling feet and legs

"When did first symptoms appear (Patient's knowledge) June, 1957

"Date first consulted August 14, 1957"

The Insured's Statement, dated January 30, 1958, signed by plaintiff, contains the following:

"Date you 1st noticed symptoms or realized you were getting sick June, 1957

"Date 1st saw a doctor August, 1957."

In a letter-report to defendant dated February 17, 1958, Dr. W. stated, as follows:

"Examination revealed that the cervical disease for which she had been previously treated, was completely cured and her menopausal symptoms had been controlled by hormone therapy. * * * The condition which necessitated the surgery, had its onset on January 4, 1958, and surgery was not suggested nor deemed necessary previous to that date. The onset of her pathology requiring surgery, can definitely be stated to have begun on the 4th of January, 1958."

On cross-examination, Dr. W. testified as follows:

"Q. That is a part of the true condition she had in January, 1958?

"A. She did not have cervicitis. That had been cured.

* * * * * *

"Q. Now, is it possible, Doctor, that that chronic cervical condition, even though you did not see those symptoms direct, that it could have been caused by the flow that you noted in January, 1958?

"A. I have repeatedly stated that it conceivably could not have anything to do with it."

Dr. W.'s testimony and reports comprised the only medical evidence in the case. His testimony having been based on facts disclosed by his examination and findings, possessed probative value. Mutual Benefit Health & Accident Ass'n v. Ramage, 1943, 293 Ky. 586, 169 S.W.2d 624.

The applicable rule is stated in the syllabus of Richards v. American Security Life Insurance Company, Okl., 303 P.2d 1110, as follows:

"In an action on an insurance policy containing a provision providing indemnity for hospitalization 'resulting from sickness the cause of which originates while this policy is in force,' the sickness is deemed to 'originate' when it first becomes manifest by a symptom or condition from which one learned in medicine could with reasonable accuracy diagnose the specific disease *which thereafter was the cause of the hospital confinement.*" (Emphasis added.)

In the instant case, it is undisputed that plaintiff was found to have a "disease of the female generative organs" on August 14, 1957, by diagnosis of a physician. The decisive question, however, is whether that condition was the cause of her hospital confinement and surgery on January 16, 1958, for which policy benefits were sought.

In an action of legal cognizance tried to a jury, it is not our function to weigh the evidence, and where there is any competent evidence reasonably tending to support the verdict and judgment, the same will not be disturbed on appeal. Batts v. Carter, Okl., 312 P.2d 472.

There is ample competent medical evidence to support a finding that the disease of plaintiff's female generative organs which first manifested itself on August 14, 1957, within the six-month period, was completely cured, and, therefore, was not the cause of plaintiff's hospitalization and surgery on January 16, 1958; and that the condition which caused said hospitalization and surgery originated after the expiration of the six-month waiting period.

Finally, defendant contends that, in any event, it is not liable in any amount in excess of $236.25, according to the policy terms. We agree with this contention, after reviewing the pertinent evidence.

Judgment for plaintiff is modified to fix her recovery at $236.25, with interest thereon at 6% per annum from October 20, 1958, and the costs of the action, and, as modified, is affirmed.

The Court acknowledges the aid of Supernumerary Judge N. S. Corn in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted.

WILLIAMS, V. C. J., and HALLEY, JOHNSON, BLACKBIRD, JACKSON, IRWIN and BERRY, JJ., concur.