**BANKERS SERVICE LIFE INSURANCE COMPANY, Plaintiff in Error,**

v.

**Lesley Don GILLIAM, Defendant in Error.**

**No. 38964.**

Supreme Court of Oklahoma.

July 5, 1961.

Thomas E. Bennett, Oklahoma City, for plaintiff in error.

Milor & Thomas, Ardmore, for defendant in error.

PER CURIAM.

The plaintiff in his first amended petition alleged in substance that on the 20th day of September, 1956, in consideration of the payments by the plaintiff's mother, Anna Corinne Gilliam, to the defendant, Bankers Service Life Insurance Company, of monthly premium payments in the amount of $11.75, the defendant issued a policy of insurance in writing to plaintiff's mother with the plaintiff as beneficiary whereby defendant agreed to provide benefits for loss due to the hospital confinement and other expenses resulting from accidental bodily injury to plaintiff's mother, and to Buck Hudson, plaintiff's grandfather; that by the terms and conditions of said insurance policy, the defendant agreed to pay for hospitalization commencing while the policy was in force on account of injury resulting from accidental bodily injury sustained to insured, Anna Corinne Gilliam, and to pay surgeon's fee necessitated by said accidental injury while the policy was in force.

It was further alleged that on May 28, 1957, while the policy was in full force and effect, the insured was involved in an automobile accident in which she was thrown into the steering wheel of her automobile causing an extremely painful and severe hernia between her bladder and vagina, so that it was necessary for her to be hospitalized and operated on to remove said hernia; that under the terms and by the conditions of said insurance

policy, and a rider allowing $5 extra for each day's hospitalization, the defendant became liable to the plaintiff for: hospital room $90; operating room, $25; anesthesia, $20; laboratory service $7.50; x-ray $10; routine medicines, $16; surgical dressings and supplies, $27; antibiotics, $12; hypodermics, $4.75; and surgery fees, $80.

The defendant denied each and every allegation of the petition of the plaintiff, and demanded strict proof thereof, and alleged that under the terms and conditions of the said insurance policy it was not liable to the plaintiff for the reason that the insured had, at the time and prior to the time that said policy of insurance was issued, a history of physical disorder similar to the physical disorder upon which plaintiff herein predicates his claim for recovery; that said physical disorder existed prior to the issuance of said policy and was not disclosed to the defendant herein as required under the terms and conditions of said policy of insurance.

The plaintiff's reply to the answer of the defendant was. a general denial.

Upon the issues thus joined trial was had to a jury and at the conclusion of the evidence of the plaintiff the defendant demurred thereto and the same was overruled by the court. The defendant stood on said demurrer. From judgment for plaintiff and the court's order overruling motion for new trial, the defendant appeals.

The evidence discloses that plaintiff's mother at the time of making application for the said insurance policy represented to defendant that she was in good health and free from any physical defect. She testified on direct examination that at times she had had a cold which settled in her kidneys and made urinating difficult; that at the time she took out the policy she did not have an active case of any kind to her knowledge; that her physician had told her that some time she might need an operation, but that he didn't say what sort of operation; that she went to the physician whenever she felt she needed a checkup; that these visits did not always pertain to the bladder. She further testified that

she was traveling west on 12th Avenue in Ardmore, Oklahoma, on the 28th day of May, 1957, when a truck traveling north on B Street ran into her car and caused her to wrestle with it to keep it from turning over and getting into the other lane of traffic; that as a result of the collision the steering wheel of her car struck her in the stomach and injured her causing "a heavy low down feeling passing in the lower part of my abdomen". A pain which she testified she had never had before; that due to urgent work in her office she did not see her doctor until the following Saturday. He advised her that she needed surgery and that there wasn't any way he could make her well without it. He later operated on her and she was in the hospital 9 days.

The attending physician testified in part as follows:

"A. If, in October she had a small weakness between the bladder and the vagina and then in July, see her again and she has a pronounced herniation where this bladder comes out, it's fair to assume that the normal course of human events wouldn't have brought that on between October of '56 and June first of '57. So, something must have taken place, excessive straining, injuries, or some other number of events that had brought this on rather precipitously or made it a whole lot worse in a short period of time. We know that these things begin ordinarily with a full bladder at childbirth. If the bladder is not kept empty that bladder is pushed down by the head of the baby and there is some tearing there. But as she was at this time, far beyond, or beyond the child bearing period, it certainly wasn't aggravated by that, so there must have been something between October and June that brought this on rather violently. It is known to most everyone, it is accepted by the medical profession, that with any impact there is a sudden tensing of all of the muscles of the body, whether it's an impact of running into somebody in

the hall, or a fall that is severe, or anything that would cause an intense spasm of the abdominal muscles in a protect reflex, protective way, or however it might be. Anything that would increase the intra-abdominal pressure could bring about a hernia even if there wasn't any weakness or a rupture."

There is no contention in the record that the conditions upon which this suit is based did not exist or that an automobile accident did not occur. The sole issue is whether the injury was a pre-existing one and not caused by the accident.

■ In the case of Bankers Service Life Insurance Company v. Ritchie, Okl., 351 P.2d 1045, this court said:

"In an action on insurance policy providing coverage for specified disease only if the disease originates after policy has been in force for six months or more, the disease is deemed to originate when it first becomes manifest by a symptom or condition from which one learned in medicine could with reasonable accuracy diagnose the specific disease which thereafter was the cause of the hospital confinement and surgery."

■ We find in the testimony of plaintiff's mother and her attending physician and surgeon direct proof that the injury giving rise to hospitalization was sustained on May 28, 1957, instead of at some prior date. Defendant's question then resolves itself into a question of fact for the jury. The jury duly decided the question in plaintiff's favor. It is the established rule in this state that the Supreme Court on appeal in a law action will not disturb the judgment of the trial court rendered on the verdict of a jury if there is any evidence reasonably tending to prove either directly and immediately or by permissible inference the essential facts necessary to sustain the verdict. Madden v. Tilly, 175 Okl. 589, 54 P.2d 161; State Bank of Seneca, Mo. v. Miller, 171 Okl. 253, 42 P.2d 834; Midland Valley Ry. Co. v. Goble, 77 Okl. 206, 186 P. 723; Missouri, O & G Co. v.

Smith, 55 Okl. 12, 155 P. 233; Great Western Coal & Coke Co. v. Serbantas, 50 Okl. 118, 150 P. 1042.

Objection is made to the refusal of the court to give defendant's requested instructions numbers 1 and 2. No exceptions were preserved to the instructions which the court did give. We are of the opinion that those given correctly embodied the applicable law.

Affirmed.

The Court acknowledges the aid of Supernumerary Judge CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.