**BLUE CROSS AND BLUE SHIELD OF KENTUCKY, INC., Appellant,**

v.

**Gary D. WHITAKER and Nancy E. Whitaker, Appellees.**

Court of Appeals of Kentucky.

April 5, 1985.

John C. Watkins, Jr., Louisville, for appellant.

John Swinford, Swinford & Sims, Cynthiana, for appellees.

Before GUDGEL, LESTER and REYNOLDS, JJ.

LESTER, Judge.

This is an appeal from a judgment based on a jury verdict which found Blue Cross and Blue Shield guilty of bad faith and awarded consequential damages in the form of attorney fees.

Blue Cross and Blue Shield of Kentucky (hereinafter referred to as Blue Cross) issued a contract to Nancy Whitaker, through her employment, by which it agreed to provide medical insurance to Nancy and her family. Nancy's husband, Gary became covered by the contract on September 1, 1982.

This contract included a common provision which establishes a nine-month waiting period during which medical services for an illness or condition existing prior to the effective date of the contract are not covered.

In March of 1983, Gary went to see Dr. Richard Allen for hemorrhoid problems. He was treated in the office at that time, but returned two weeks later and was admitted into the hospital for surgery. Subsequently, claims were filed for hospital expense and surgery benefits. As part of its review of the claim, Blue Cross received all the records of the hospital and physician. Included in those records was the history and physical examination report of Dr. Allen. This report stated in part:

> He [Mr. Whitaker] has had recurrent trouble with these for over a period of the past two or three years, which have been more severe.

Based largely on this report, Blue Cross made an initial denial of Gary Whitaker's claim, determining that the hemorrhoid problem was a pre-existing condition.

This was the first of several items of correspondence between Blue Cross, the Whitakers, and the treating physician, Dr. Allen. After the initial denial by Blue Cross, Dr. Allen, by letter, indicated that "the acute thrombosis of the hemorrhoidal veins was a new problem." Dr. Allen also expressed amazement that the insurer was denying the claim, however, the language of the aforementioned report was never mentioned or contradicted.

It was not until the day before trial that the attorney for Blue Cross and Dr. Allen spoke directly. In that conversation, Dr. Allen revealed that he had made a mistake on the medical report and that the statement that Mr. Whitaker's problem was two or three years old was incorrect.

At trial, a jury awarded Gary Whitaker his hospital and surgical expenses under the health benefits contract. Blue Cross does not contest that award, but appeals based on the instructions which allowed a finding of bad faith on the part of the appellant.

The appellee devotes a major portion of its brief to a discussion of "pre-existing

condition" clauses in health insurance policies, relying upon *Inter-Ocean Ins. Co. v. Engler*, Ky.App., 632 S.W.2d 459 (1982). While *Engler* contains an excellent discussion of such exclusion clauses, it is not pertinent to this appeal, as appellant does not contest the decision that Mr. Whitaker's condition did not exist prior to the effective date of the contract.

Thus, the only issue on appeal is whether this realization on the part of Blue Cross, coming only after the jury verdict, is so dilatory as to entitle appellee to consequential damages.

Until about a year ago, Kentucky courts had uniformly held that damages for breach of a first party insurance policy were limited to the amount due under the contract. [*See*, e.g., *Gen. Accident Fire & Life Assurance Corp. v. Judd*, Ky., 400 S.W.2d 685 (1966); *Deaton v. Allstate Ins. Co.*, Ky.App., 548 S.W.2d 162 (1977) ].

However, in *Feathers v. State Farm Fire & Cas. Co.*, Ky.App., 667 S.W.2d 693 (1983), this court recently held that when an insurer wrongfully withholds payment of proceeds under the policy, its insured may recover consequential and punitive damages for the tortious conduct. This decision aligned Kentucky with a growing number of states which have recognized the tort of first party bad faith.

*Feathers*, in finding that there is no prohibition against the tort of bad faith in Kentucky law, held as follows:

> ... once the policyholder has substantially complied with the terms and conditions required by the policy, ... then at that point, the insurance company becomes akin to a fiduciary as to the sums that may be owed under the policy. *Id.* at 696.

■ While this case opened the door to first-party bad faith claims, we do not feel it should be read as creating a type of strict liability whenever an insurer reasonably believes its insured has not complied with the conditions for payment and is then judged to have been incorrect. 72 Ky.L.J. 141, at 174 (1983–84).

■ Instead, we believe that an action for bad faith, whether a first-party or a third-party situation, requires something more than mere negligence. The term itself implies some intentional wrongful conduct, as is illustrated by the language of third-party cases such as *Manchester Ins. & Indemnity Co. v. Grundy*, Ky., 531 S.W.2d 493 (1975). Mere errors in judgment should not be sufficient to establish bad faith. *Grundy*, at 497. Furthermore, as was stated in *Feathers, supra*, at 696,

> We are not talking about bad manners or mere breakdowns in communications....

The case at bar presents a better illustration of a breakdown in communications than of a bad faith failure to pay.

The evidence is uncontradicted that Blue Cross reviewed the claim initially, asked a medical consultant employed by the appellant to review the claim, and finally sent the claim to an independent KMA Peer Review Committee. In each of the three instances, the claim was denied on the basis of the records, reports, and correspondence. At no time during the investigation of the claim, did it become apparent that the history taken by Dr. Allen of a "two to three year old problem" was a mistake.

Appellees argue that Blue Cross should have checked directly with Dr. Allen, or in the alternative, that when the company learned of the mistake the day before trial, it should have paid the claim, and that its failure to do so was in bad faith. We cannot agree.

While more and more jurisdictions are recognizing actions for first-party bad faith, we have found none which would find a delay of one day, upon learning of the true facts, to be so dilatory as to constitute bad faith. Nor can we find that the investigation of the claim was anything more than negligent, if that.

■ Absent some proof that Blue Cross acted intentionally, willfully or in reckless disregard of its insured's rights, we cannot uphold a verdict allowing consequential or punitive damages. Where, as here, a reasonable basis existed for denying the claim, even though ultimately

found incorrect, the appellant cannot be charged with bad faith.

Finally, Blue Cross also argued that the court below erred in allowing the jury to award consequential damages in the form of attorney fees. Appellant maintains that such an award cannot be granted absent a statute or contract providing for the same.

■ While many jurisdictions have provided for attorney fees to be recoverable in bad faith actions, this is a determination more properly left to the legislature. Thus, we can only refer to the language of another recent decision of this court, which stated:

> ... Kentucky Courts have been consistently reluctant to uphold awards of attorneys' fees except in those particular instances when such fees are authorized by a statute or a contract expressly providing therefore. *White v. Sullivan*, Ky. App., 667 S.W.2d 385, 389 (1983).

The judgment of the Harrison Circuit Court is affirmed as to the award of benefits under the contract and reversed as to the finding of bad faith and the award of consequential damages in the form of attorneys fees.

All concur.