**Deanna MATT, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. C90–0101–L(J).**

United States District Court, W.D. Kentucky, Louisville Division.

Aug. 15, 1991.

On Motion to Reconsider Oct. 7, 1991.

**430**

Gregg Y. Neal, Neal and Davis, Shelby-ville, Ky., for plaintiff.

Linda Thomas, Brown, Todd & Heyburn, Charles S. Cassis, Louisville, Ky., for defendant.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This is a diversity jurisdiction case involving a claim against an insurer for bad-faith failure to settle a personal injury tort action for the limits of an automobile liability policy. The case is before the court on motion of the defendant insurer for summary judgment pursuant to FED.R.CIV.P. 56. The material facts are set out in this opinion. Finding no genuine issues as to these facts and finding that the conduct of defendant does not rise to the level of bad-faith under Kentucky law, the motion is granted.

## I. BACKGROUND

On July 13, 1986, plaintiff Deanna Matt, was injured in a two vehicle automobile accident. The accident occurred when a vehicle driven by Mark J. Pignanelli crossed the center line of a highway striking Matt's vehicle head on. Pignanelli, who was covered under a $60,000 automobile liability insurance policy issued by defendant Liberty Mutual Insurance Company ("Liberty"), died as a result of the injuries sustained in the accident. Matt sustained severe and permanent injuries resulting in medical expenses in excess of $50,000.

Matt retained the services of attorney Gary Weiss to pursue a personal injury claim against Pignanelli's estate. After taking the case, Weiss immediately demanded that Liberty provide him with all applicable insurance policy limits covering the accident. Although no law suit had been filed, Weiss was persistent in his efforts to discover the liability limits and repeatedly informed Liberty that their continued resistance to provide him with coverage information would be an act of bad faith not towards his client but towards Liberty's insured, the Pignanelli estate.

On October 9, 1986, less than three months following the accident, Weiss filed a complaint on behalf of Matt in Jefferson Circuit Court. On this date, Weiss, by letter, extended an offer to settle the personal injury action for $1,000,000 or, in the alternative, for the stated limits of all policies of liability insurance providing coverage on the Pignanelli vehicle. The letter stated, in part, "Failure to respond as conditioned above will be considered clear and convincing evidence of bad faith on the part of Liberty Mutual to its insureds." By its terms, the offer remained open up to and including October 16, 1986.

On October 16, 1986, Cheryl Lutts, a Liberty adjuster, called Weiss and stated that Liberty would pay Matt the $60,000 in liability coverage which the company provided on the Pignanelli vehicle. The understanding that the case had been settled was acknowledged by Weiss in a letter dated October 22, 1986.

In a November 24, 1986 telephone conversation, Lutts indicated to Weiss that Liberty intended to include Matt's no-fault insurance carrier as a payee on the settlement check. In response, Weiss stated "[n]o, I don't want them on the check." Within 24 hours following this conversation, Liberty contacted Weiss and informed him that it would not require that the no-fault carrier be named as a payee since, under Kentucky law, the no-fault carrier could not recover benefits provided to Matt. Weiss stated that Matt had withdrawn her settlement offer, rejects Liberty's counter-offer to settle for policy limits of $60,000 and would proceed to trial. Liberty, however, informed Weiss of its continuing offer to settle the case for the policy limits of $60,000.

Some two years later, the case was tried in Jefferson County Circuit Court and the jury awarded Matt $1,094,900.22 in damages for the injuries she sustained in the accident. In exchange for a release of liability against the Pignanelli estate, Matt received an assignment from the estate of all rights to pursue the estate's cause of action against Liberty for bad faith failure to settle the tort claim for policy limits.

As assignee of the estate, Matt filed this bad faith action, extensive discovery has occurred, and Liberty now moves for summary judgment on the following grounds:

1. Liberty reached a settlement with Matt on October 16, 1986 which Matt breached by in November, 1986;

2. Liberty never refused to settle the case for the liability policy limits of $60,000;

3. Assuming Liberty acted in bad faith, Pignanelli's insolvent estate is not exposed to liability for the excess judgment;

4. Liberty provided a proper defense on behalf of its insured; and

5. Liberty did not commit any of the acts enumerated in K.R.S. 304.12–010 *et seq.*—the Unfair Claims Settlement Practices Act.

In response Matt asserts that (a) no settlement was reached in October, 1986 (b) Liberty acted in bad faith in failing to settle promptly, (c) Liberty's insistence upon the inclusion of Matt's no-fault carrier as a payee on the settlement check was a refusal to pay policy limits and a rejection of the settlement offer, (d) the insolvency of the Pignanelli estate does not excuse Liberty's bad faith, and (e) Liberty violated K.R.S. 304.12–010 *et seq.*

## II. ANALYSIS

Summary judgment is proper when there is no genuine issue as to any material fact. In ruling on a motion for summary judgment, a federal court must determine whether the party opposing the motion has produced sufficient evidence to defeat a directed verdict at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court in *Anderson* stated:

[A]t summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.... [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is

merely colorable, or is not significantly probative, summary judgment may be granted. *(citations omitted)*.

Similarly, in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) the Court explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and upon which the party will bear the burden of proof at trial.

Procedurally, Liberty's dispositive motion will be judged under the foregoing principles of federal law. Substantively, the question of whether Matt has presented evidence sufficient of bad faith to survive a directed verdict at trial requires an analysis of Kentucky bad faith law in the context of an insurer's failure to settle a case in which liability is clear thereby exposing its insured to liability.

### A. Kentucky Case Law Regarding Bad Faith.

■ Beginning with *American Surety Co. of N.Y. v. J.F. Schneider & Son*, Ky., 307 S.W.2d 192 (1957), *(overruled on other grounds*, 531 S.W.2d 493, 499 (1976)), Kentucky courts recognized the now long standing principle that errors in judgment on behalf of insurers are not, in and of themselves, sufficient to constitute an act of bad faith. In *American Surety*, an insured filed an action against its automobile liability insurer asserting that the failure to settle a wrongful death action for policy limits exposed the insured to excess liability. Finding no bad faith on the part of the insurer, the Kentucky Court of Appeals stated:

> There is no liability on the insurer for failure to settle claims against the insured in excess of the policy limit in the absence of bad faith. It is the duty of the insurer to exercise the utmost good faith. Mere errors of judgment are not sufficient to constitute bad faith. Acting in bad faith or the failure to exercise good faith is sufficient to create liability on the part of the insurer for the excess of the policy limit.... No satisfactory test to determine good or bad faith in a case such as this has been formulated.... So long as it acts in good faith, considering the interest of the insured as well as its own, and not capriciously, an insurer cannot be required to settle a case rather than to litigate a doubtful issue or to bear the financial burden imposed on the insured if ultimate liability should exceed the policy limit.... There is no merit to appellee's argument that the insurer is compelled to offer or make a settlement of its full liability. The inducement to an insurer to settle is that it can do so for less than the policy limit. There is no such inducement if the insurer is compelled to offer the full policy amount in settlement. It may as well try the case in the hope for a jury verdict for less than its full liability. *(citations omitted)*. Accord, *Terrell v. Western Casualty & Surety Co.*, Ky., 427 S.W.2d 825 (1968).

Later in *Harrod v. Meridian Mut. Life Ins. Co.*, Ky., 389 S.W.2d 74 (1964), *(overruled on other grounds*, 531 S.W.2d 493, 500 (1976)) the Kentucky Court of Appeals was again confronted with a bad faith action against an insurer arising from the failure to settle a wrongful death claim for policy limits. The case arose from an automobile accident in which plaintiff's decedent was killed. Prior to filing suit, plaintiff offered to settle the case for $9,999.00,—one dollar less than the policy limits which offer was to remain open for a period of 10 days. When the offer was not accepted within the ten day time period, suit was filed. Some 17 days following the expiration of the settlement offer, defendant's insurer offered to settle the case for policy limits, which offer was rejected. Following a verdict exceeding policy limits plaintiff, under an assignment of rights from defendant, initiated a bad faith failure to settle claim against the liability insurer. Finding that the conduct of the insurer did not, as a matter of law, raise an issue of bad faith, the court noted that Kentucky applies a conscious bad faith as opposed to negligence test in failure to settle cases.

Further, the court made the following observations regarding the law of bad faith in Kentucky:

> To support a recovery it was incumbent upon appellant to allege and prove that Meridian's conduct was of such an arbitrary and reprehensible nature as to constitute bad faith. In the case of *Spiegel v. Beacon Participations, Inc.*, 297 Mass. 398, 416, 8 N.E.2d 895, 907 [1937], it was said:
>
> > Bad faith is a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose of some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It partakes of the nature of fraud ... It means with actual intent to mislead or deceive another....
>
> *We believe the conduct of Meridian was at worst no more than a failure to settle through error, or mistake, or inaction within the ten-day ultimatum period mentioned. Never at any time, in our opinion, was there a conscious, deliberate refusal to settle.* On the other hand, from the very time the full amount of the policy coverage was offered, the offer was made as a continuing one. The offer appears to have been rejected solely on the ground that this amount had not been tendered within the time period prescribed by appellant's counsel. (*emphasis added*).

In *State Farm Mutual Automobile Ins. Co. v. Marcum*, Ky., 420 S.W.2d 113 (1967), (*overruled on other grounds*, 531 S.W.2d 493, 500 (1976)) the Court of Appeals again addressed the issue of bad faith in the context of a failure to settle a claim for policy limits. The court, in affirming a judgment against an insurer for bad faith, noted that (a) clear liability, (b) the seriousness of the injuries sustained and (c) the failure to seize the opportunity to settle the case for the policy limits of $20,000 resulted in sufficient evidence of bad faith. *Compare Harvin v. United States Fideli-*

*ty & Guaranty Co.*, Ky., 428 S.W.2d 213 (1968) (holding that no cause of action for bad faith exists when insurer has reasonable grounds to contest liability).

For several years the law of Kentucky on the issue of bad faith tracked the *Marcum, Harrod* and *American Surety* decisions. Then in *Manchester Ins. & Indem. Co. v. Grundy*, Ky., 531 S.W.2d 493 (1976) the court revisited the issue of bad faith and in so doing overruled *American Surety, Harrod* and *Marcum*, in part. Further, the court outlined several factors to be considered in bad faith actions:

1. probability of recovery;
2. probability that recovery will exceed policy limits;
3. negotiations with respect to settlement;
4. offers to settle for less than policy limits; and
5. whether the insured demanded that the insurer settle.

■ In light of these five factors and opining that last minute settlement offers which preclude an insurer from adequately evaluating the offer receive less weight, the court formulated the following test for judging whether an insurer's conduct rises to the level of bad faith:

> Did the insurer's failure to settle expose the insured to an unreasonable risk of having a judgment rendered against him in excess of the policy limits?

The foregoing cases involved claims against an insurer for failure to settle a case ultimately resulting in liability exceeding policy limits for which the insured was liable. More recent cases dealing with first party breach of insurance policies and tort liability of an insurer to its policyholders provide insights into the law of bad faith in Kentucky which are, if not directly on point, instructive. For example in *Feathers v. State Farm*, Ky.App., 667 S.W.2d 693 (1983), (*overruled*, 711 S.W.2d 844, 845 (1986)) the Kentucky Court of Appeals held that an insurer may be liable for compensatory and punitive damages in tort for wrongfully withholding proceeds properly payable under policy terms. The court

reached this conclusion by noting that the insurer sits in a fiduciary capacity in relation to its insured with regard to sums which may be due and owing under the policy.

In *Blue Cross & Blue Shield of Ky. v. Whitaker*, Ky.App., 687 S.W.2d 557 (1985) medical expense claims were denied on the grounds that the expenses were incurred for treatment of a condition which existed prior to the effective date of the policy. On the morning of trial, the treating physician informed the insurer that he had made a mistake in his medical reports and was of the opinion that the condition was not preexisting. The case proceeded to trial and the jury awarded damages for bad faith denial of the claim. On appeal, the court noted that *Feathers*, although opening the door to first party bad faith actions, should not be read as creating strict liability on the part of the insurer. Rather, the court concluded that bad faith, whether first or third party, requires something more than mere negligence or errors in judgment and in reversing the award of damages for the tort of bad faith, stated:

> [W]e believe that an action for bad faith ... requires something more than mere negligence. The term implies some intentional wrongful conduct ... [m]ere errors in judgment should not be sufficient to establish bad faith. Furthermore, as stated in *Feathers* ...
>
>> We are not talking about bad manners or mere breakdown in communications. ...
>
> The case at bar presents a better illustration of a breakdown in communications than of a bad faith failure to pay.

In *Federal Kemper Ins. Co. v. Hornback*, Ky., 711 S.W.2d 844 (1986), (*overruled*, 784 S.W.2d 176 (1989)) the court overruled *Feathers* and held that an insureds sole remedy for failure to pay under the terms of the policy lies in a contract action. This judicial pronouncement was, however, short lived. In *Curry v. Fireman's Fund Ins. Co.*, Ky., 784 S.W.2d 176 (1989), the Supreme Court of Kentucky overruled *Federal Kemper* resurrecting the tort of bad faith in Kentucky.

 While the history of the law of bad faith in Kentucky is confusing and while the tort of bad faith has been adopted, rejected and adopted again within a relatively short period of time, one principle of law is clear—mere negligent conduct will not support a bad faith action. Liability for bad faith will arise only in those instances where an insurer acts with some degree of conscious wrongdoing, reckless or in a manner which reveals an unjustified gamble at the stake of the insured. If the insurer unjustifiably rejects a settlement offer at the risk of exposing its insured to liability in excess of policy limits, then the insurance company has breached its duty to protect its insured and an action in bad faith under Kentucky law may arise. However, in order to survive a motion for summary judgment, a plaintiff in a bad faith action must come forward with evidence, sufficient to defeat a directed verdict at trial, which reveals some act of conscious wrongdoing or recklessness on the part of the insurer.

**B. Conduct of Liberty.**

 With these principles in mind, the court must now consider the conduct of Liberty upon which this action is based. This conduct, however, cannot be viewed in isolation; rather, it must be viewed in conjunction with the actions of Matt's attorney Weiss.

The very essence of this bad faith action lies in the November 24, 1986 conversation between Lutts, the Liberty adjuster, and Weiss, Matt's attorney, regarding the drafting of a settlement check which conversation occurred after all parties were of the opinion that the case had been settled. During this telephone conversation, Lutts indicated that Liberty would include Matt's no-fault insurance carrier as a payee on the $60,000 settlement check. When Weiss objected, Liberty agreed, within 24 hours, to make the check payable solely to Matt. Matt, however, "withdrew" the settlement offer and proceed to trial.

Here, Matt's personal injury attorney threatened Liberty with a bad faith action immediately after being retained by Matt

and several weeks before suit was filed. These threats continued through October 16, 1986, the date on which Liberty agreed to pay its policy limits to Matt. When a temporary and minor dispute arose with regard to whether Matt's no fault carrier should be included as a payee on the settlement check, the window of opportunity to make good on the threats of bad faith opened. Like the events in *Whitaker, supra,* the conduct of Liberty was at most a breakdown in communication between its adjuster and the attorney representing the Pignanelli estate. The attorneys for both parties were aware that the no fault carrier could not, under Kentucky law, recover any portion of the claim it paid to its insured Matt and therefore had no right to share in the $60,000 in coverage provided by Liberty.

The law of bad faith in Kentucky serves a useful purpose in protecting insureds from willful and reckless conduct by insurers in situations where the insurers often hold the upper hand. However, this court finds that the Supreme Court of Kentucky would not permit the law of bad faith to become the pawn of creative plaintiffs attorneys. If the conduct of Liberty in this case is sufficient to create an issue of bad faith, such an outcome would arise.

In short, Liberty did not engage in conduct which rises to the level of bad faith. Rather, this case is a prime example of a breakdown in communications or, at most, mere negligence on the part of Liberty. Accordingly, Liberty is entitled to judgment as a matter of law on the issue of bad faith.

C. Unfair Claims Settlement Practices.

■ Liberty likewise moves the court enter judgment in its favor on the claim for violations of the Kentucky Unfair Claims Settlement Practices Act, K.R.S. 304.12–010 *et seq.* The court has reviewed the record and finds, as a matter of law, that Liberty did not engage in conduct which could be construed as a violation of K.R.S. 304.12–010 *et seq.* The only possible provision of the Unfair Claims Settlement Practices Act upon which Matt could base a claim would be K.R.S. 304.12–230(6) which prohibits an insurer from failing to attempt:

> [I]n good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear.

Nothing in the record supports Matt's contention that Liberty failed to effectuate a prompt, fair and equitable settlement of the case on behalf of the Pignanelli estate. Accordingly, Liberty's motion for summary judgment on the alleged violations of the Unfair Claims Settlement Practices Act is granted.

Having ruled in favor of Liberty on claims of bad faith and unfair claims settlement practices the court finds it unnecessary to address the remaining issues raised in Liberty's motion for summary judgment.

An appropriate order accompanies this memorandum opinion.

## ORDER

The court having entered its memorandum opinion and being otherwise sufficiently advised,

The motion of defendant, Liberty Mutual Insurance Company, for summary judgment is GRANTED and the complaint filed by plaintiff Deanna Matt is DISMISSED, with prejudice.

The motion of plaintiff Deanna Matt for oral argument is DENIED. The court will, however, entertain motions for reconsideration in light of the conclusions reached in its opinion.

This is a final and appealable order and there is no just cause for delay.

IT IS SO ORDERED.

## ON MOTION TO RECONSIDER

This matter is before the court on plaintiff's motion to reconsider and vacate the order entered August 15, 1991 granting summary judgment to defendant and for oral argument. Finding that the conclusions reached in the memorandum opinion and order entered August 15, 1991 are correct and that no genuine issue of materi-

al fact exists, plaintiff's motions are denied.

## I.

As set forth in detail in the court's August 15, 1991 opinion, this action concerns allegations of bad faith on the part of defendant Liberty Mutual Insurance Company. Plaintiff contends that Liberty Mutual acted in bad faith exposing its insured to judgment in excess of policy limits by failing to promptly settle a personal injury action in which liability on the part of its insured was clear. The court entered summary judgment in favor of Liberty on the grounds that the company's conduct did not amount to bad faith towards its insured. The court concluded that this bad faith action was based on nothing more than a temporary and minor dispute over the inclusion of the injured plaintiff's no-fault carrier as a payee on the settlement check.

Plaintiff now moves the court to reconsider and vacate its previous opinion. In support of this motion, plaintiff argues that Liberty's conduct constitutes bad faith towards its insured, the court's finding that the failure to settle was based upon a breakdown in communication was erroneous, the attention focused on the conduct of plaintiff's personal injury attorney was improper, and the court erred in ruling on Liberty's dispositive motion prior to considering plaintiff's motion to compel.

## II.

The court has considered plaintiff's arguments and finds that the memorandum opinion and order granting summary judgment, which included a historical overview of bad faith case law in Kentucky and an analysis of the conduct of all parties, was correct. The conduct complained of does not rise to the level of a violation of the Kentucky Unfair Claims Settlement Practices Act or bad faith.

For these reasons,

Plaintiff's motion for reconsideration, motion to vacate and motion for oral argument are DENIED.

This is a final and appealable order and there is no just cause for delay.

IT IS SO ORDERED.