**BIG YANK CORPORATION,**
**Plaintiff–Appellant,**

v.

**LIBERTY MUTUAL FIRE INSURANCE**
**COMPANY, Defendant–Appellee.**

Nos. 95–5557, 95–6008.

United States Court of Appeals,
Sixth Circuit.

Argued June 4, 1996.

Decided March 12, 1997.*

---

* This decision was originally issued as an "unpublished decision" filed on March 12, 1997. On August 15, 1997, the court designated the opinion as one recommended for full-text publication.

Carl D. Edwards, Jr. (briefed), Van Antwerp, Monge, Jones & Edwards, Ashland, KY, Robert S. Smith (argued and briefed), Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Plaintiff-Appellant in No. 95–5557.

Carl D. Edwards, Jr. (briefed), Van Antwerp, Monge, Jones & Edwards, Ashland, KY, Laura M. Schachter, Robert S. Smith (argued and briefed), Paul, Weiss, Rifking, Wharton & Garrison, New York City, for Plaintiff-Appellant in No. 95–6008.

Donald L. Miller II (briefed), Charles S. Cassis (argued and briefed), William B. Baird (briefed), Maureen P. Taylor (briefed), Brown, Todd & Heyburn, Louisville, KY, for Defendant-Appellee.

Before: MERRITT and COLE, Circuit Judges, and ECHOLS, District Judge.[**]

COLE, Circuit Judge.

The plaintiff appeals the district court's grant of summary judgment in favor of the defendant in its suit alleging that the defendant, as the plaintiff's workers compensation insurer, breached its duty to represent the plaintiff under its policy in good faith. The plaintiff claims that this breach resulted in an over-reporting of the valid workers compensation complaints against it, causing the plaintiff to incur substantial premium increases and ultimately forcing it into bankruptcy. Additionally, the plaintiff appeals the district court's award of attorneys' fees to the defendant. For the reasons that follow, we **AFFIRM** the district court's grant of summary judgment, but **REVERSE** its decision ordering the plaintiff to pay defendant's attorneys' fees and **REMAND** the case for additional findings of fact.

## I.

Plaintiff-Appellant Big Yank Corporation ("Big Yank") is a clothing manufacturer with several manufacturing facilities throughout the United States, including Wewoka, Oklahoma. Big Yank contracted with Defendant-Appellee Liberty Mutual Fire Insurance Company ("Liberty Mutual") to provide Big Yank with workers compensation insurance for all its facilities for the period of June 1, 1990 through August 1, 1991 ("the policy period").[1] In this policy, Liberty Mutual agreed to defend Big Yank against any workers compensation claims brought against it, but reserved solely to itself "the right to investigate and settle these claims, proceedings or suits."

The policy also contained a "retrospective ratings endorsement." Pursuant to that provision, Big Yank's premium would be established at the time that a policy was purchased and would be subject to adjustment at certain intervals within the policy period depending partially on the number of claims asserted against Big Yank. However, the policy also provided a "cap" on the maximum premium that could be charged to Big Yank during one policy period.

On May 17, 1991, Big Yank gave notice to its employees that it would close its sewing facility in Wewoka, Oklahoma by the end of the next month. Within the next few weeks after Big Yank gave its notice, 429 workers compensation claims were filed by approximately 108 different employees at the Wewoka facility. As each of these 429 claims were received by Liberty Mutual, a new claim number was assigned to each and a "reserve" (i.e. an estimate of the amount that Liberty Mutual expected to pay on the claim) was set. This data was automatically transferred to the National Council on Compensation Insurance ("NCCI"), a national ratings bureau that ranks various companies as to their individual claims experiences. These ratings are then used by insurance companies to establish premiums for the companies based on their relative safety in their industries. On this ratings scale, the theoretical "average" company in a particular industry is assigned an "experience modification rating" of 1.00. Big Yank's "experience modification

[**] The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennessee, sitting by designation.

1. Big Yank and Liberty Mutual originally contracted for the period of June 1, 1990 to June 1, 1991. By subsequent agreement, the parties extended this insurance contract through August 1, 1991.

rating" before the Wewoka closing announcement was 1.73. This rating indicated that Big Yank received one-and-three-quarters times the number of claims as the theoretical average company in its industry and, thus, should pay approximately one-and-three-quarters times the amount for workers compensation insurance that the theoretical average company should pay. After the Wewoka closing was announced and the 429 workers compensation claims were reported to NCCI, Big Yank was assigned a rating of 5.07 and calculated that it would have to pay substantially increased premiums for subsequent coverage as a result of the revised NCCI rating.[2]

After the 429 claims were filed, Liberty Mutual submitted a form to Big Yank that inquired whether Big Yank doubted the validity of any of those claims. On this form, Big Yank did not once state that it doubted the validity of any of the accidents or injuries. In fact, rather than checking the appropriate line or writing the word "yes" in the space provided, Big Yank merely left the line blank. Subsequently, Liberty Mutual, determining that it could settle these cases more cheaply than it could defend them by incurring both attorneys' fees and litigation costs, proposed that the claims asserted against Big Yank be settled. Upon Liberty Mutual's inquiry, Big Yank's vice president and comptroller, Jack Grissom, approved the settlements negotiated by Liberty Mutual. For a total policy cost to Big Yank of $788,689 during the period of coverage, Liberty Mutual settled claims totaling $4,801,808.

On September 17, 1992, Big Yank filed suit against Liberty Mutual in the Fayette County, Kentucky Circuit Court alleging that Liberty Mutual established excessive loss reserves for the claims, improperly treated the 429 claims separately, misreported to NCCI the nature of several of the cases and improperly settled claims that Big Yank believed to be meritless. Big Yank alleged that these actions dramatically increased its NCCI rating[3] and caused Big Yank to undergo severe cost-cutting measures in order to pay for workers compensation coverage in subsequent periods. Thereafter, when Big Yank filed for bankruptcy in 1993, it also alleged that its bankruptcy was due to the financial strain placed on Big Yank for securing workers compensation insurance for its remaining facilities.

Liberty Mutual subsequently removed the case to the United States District Court for the Eastern District of Kentucky. In the course of the litigation, the district court had also ordered both parties to submit offers of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure.[4] Big Yank subsequently demanded $6,000,000 to settle the action and Liberty Mutual offered only $200,000. The parties were ultimately unable to settle.

Upon Liberty Mutual's motion for summary judgment, the district court granted judgment in its favor. Specifically, the court held that, because Liberty Mutual's actions were authorized by the insurance policy between the parties, Liberty Mutual did not breach the contract itself nor any implied duty to act in good faith in representing Big Yank under that policy. Additionally, the district court declined to award attorneys' fees pursuant to the Rule 68 offers submitted by the parties, but did award Liberty Mutual its fees on the basis that Big Yank's claims were meritless and that Big Yank had pursued those claims in bad faith.

---

**2.** Although Big Yank's policy with Liberty Mutual provided that its premiums could be adjusted during the policy period depending on its claims experience, Big Yank's premiums were capped under the policy at approximately $788,689. However, Big Yank calculated that it would pay approximately $6,800,000 annually to obtain workers compensation in future policy periods due to the 5.07 NCCI rating.

**3.** After Liberty Mutual reported the 429 Wewoka claims to NCCI, Big Yank's rating was set at 5.07. This rating was ultimately lowered to 2.81.

**4.** The offers of judgment in this case differed in some respects from typical Rule 68 offers. *See* Fed.R.Civ.P. 68. Whereas Rule 68 only contemplates offers by a "party defending against a claim" and payment of costs, the offers of judgment in this case were presented by both parties and contemplated the shifting of attorneys' fees to the losing party.

Big Yank has timely appealed both rulings of the district court and those separate appeals have been consolidated for our review.

## II.

This court reviews a district court's grant of summary judgment de novo, using the same standard employed by the district court. *City Mgmt. Corp. v. United States Chem. Co., Inc.*, 43 F.3d 244, 250 (6th Cir. 1994); *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir.1993); *Kraus v. Sobel Corrugated Containers, Inc.*, 915 F.2d 227, 229 (6th Cir.1990). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding upon a motion for summary judgment, we must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

This court reviews a district court's award of attorneys' fees for an abuse of discretion. *See, e.g., Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370 (6th Cir.1987).

## III.

Big Yank first argues that the district court erred in granting summary judgment in favor of Liberty Mutual. Big Yank argues that Liberty Mutual breached its duty to defend Big Yank in good faith pursuant to the insurance policy by (1) establishing reserves for the settlement of workers compensation claims that exceeded the actual value of those claims; (2) opening a new file for each of the 429 claims asserted against Big Yank rather than grouping them according to the employees who filed them or according to related injuries; (3) misreporting to NCCI certain claims as "workplace injuries" rather

than "occupational diseases;" and (4) improperly settling workers compensation claims that Big Yank believed to be meritless. Big Yank asserts that this conduct constituted a breach of Liberty Mutual's implied duty of good faith in carrying out its obligations under the insurance policy, causing Big Yank's premiums for subsequent coverage to increase dramatically and forcing Big Yank into bankruptcy. We disagree.

Under Kentucky law,[5] an insured may recover damages for an insurer's bad faith only upon a showing that the insurer committed some intentional wrongful conduct. *See Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 177 (Ky.1989) (resurrecting the tort of bad faith as a viable cause of action in Kentucky after it had briefly been abolished); *Blue Cross & Blue Shield of Kentucky, Inc. v. Whitaker*, 687 S.W.2d 557, 559 (Ky.Ct.App. 1985) ("[A]n action for bad faith . . . requires something more than mere negligence. The term itself implies some intentional wrongful conduct. . . . Mere errors in judgment should not be sufficient to establish bad faith."); *see also Matt v. Liberty Mut. Ins. Co.*, 798 F.Supp. 429, 434 (W.D.Ky.1991) (". . . [M]ere negligent conduct will not support a bad faith action [under Kentucky law]. Liability for bad faith will arise only in those instances where an insurer acts with some degree of conscious wrongdoing, recklessness or in a manner which reveals an unjustified gamble at the stake of the insured."), *aff'd*, 968 F.2d 1215, 1992 WL 146643 (6th Cir. 1992). The cases cited by Big Yank that allow recovery upon a showing of mere negligence do not involve Kentucky law and, thus, have no bearing on our decision. *See National Sur. Corp. v. Fast Motor Serv., Inc.*, 213 Ill.App.3d 500, 157 Ill.Dec. 619, 572 N.E.2d 1083 (1991) (imposing a negligence standard under which an insured may recover); *Deerfield Plastics Co., Inc. v. Hartford Ins. Co.*, 404 Mass. 484, 536 N.E.2d 322 (1989) (holding that an insured may recover for his insurer's negligence in investigating a workers compensation claim).

---

**5.** The parties agree that Kentucky law governs this diversity action because the contract was

negotiated and entered in Kentucky.

Although Big Yank notes that Liberty Mutual's reporting of the claims filed against it caused its premiums to increase, it has failed to show any intentional tortious conduct by Liberty Mutual or any action that constituted a breach of the policy. *See Whitaker,* 687 S.W.2d at 559; *Matt,* 798 F.Supp. at 434. In fact, all of Liberty Mutual's actions in handling the workers compensation claims against Big Yank were authorized by the policy issued to Big Yank, were clearly set forth in Liberty Mutual's claims manual, or were authorized by Big Yank's vice president. Pursuant to the procedures set forth in its claims manual, Liberty Mutual established an individual file for each workers compensation claim asserted against Big Yank, established reserves to cover the potential cost of the claims, and reported to NCCI the claims that it had categorized as "workplace injuries."

■ Big Yank does not dispute that these procedures were followed or claim that it was entitled, as an insured, to dictate Liberty Mutual's method for recording the claims. Although Big Yank contends that these claims should have been handled differently because they "reeked of fraud," Big Yank failed to question the validity of *any* of the 429 claims presented to it, and its vice president, Jack Grissom, *expressly approved* of each claim's settlement. Furthermore, even if Grissom had not approved of the settlements, the express terms of the policy gave Liberty Mutual the sole right "to investigate and settle" any workers compensation suits brought against Big Yank. As the Eighth and Seventh Circuits have noted, a party's acting according to the express terms of a contract cannot be considered a breach of the duties of good faith and fair dealing. *See Unigroup, Inc. v. O'Rourke Storage & Transfer Co.,* 980 F.2d 1217, 1221 (8th Cir.1992); *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank,* 934 F.2d 976, 983 (8th Cir.1991); *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1357 (7th Cir.1990); *see also Travelers Ins. Co. v. Corporex Properties, Inc.,* 798 F.Supp. 423, 425 (E.D.Ky.1992).

In short, Big Yank has presented no evidence that Liberty Mutual handled the claims against Big Yank in a negligent, let alone intentionally tortious, manner and, thus, has failed to establish any breach of Liberty Mutual's duty to represent Big Yank in good faith under the policy. *See Whitaker,* 687 S.W.2d at 559; *Matt,* 798 F.Supp. at 434. Thus, the district court properly granted summary judgment in Liberty Mutual's favor.

**IV.**

Big Yank next contends that, even if the district court properly granted summary judgment in Liberty Mutual's favor, the court abused its discretion in ordering Big Yank to pay Liberty Mutual's attorneys' fees. Specifically, Big Yank argues that the district court could not award attorneys' fees on the basis of bad faith because the court made no finding (1) that Big Yank's claim was entirely frivolous, or (2) that Big Yank had pursued this action with an improper motive. We agree.

■ "We start with the premise that under the American Rule, absent statutory authorization or an established contrary exception, each party bears its own attorney's fees." *Colombrito v. Kelly,* 764 F.2d 122, 133 (2d Cir.1985) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)). The principal exception to this rule is a district court's inherent authority to award fees when a party litigates "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska Pipeline,* 421 U.S. at 247, 95 S.Ct. at 1616; *Colombrito,* 764 F.2d at 133. In order to award attorneys' fees under this bad faith exception, a district court must find that "the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Smith,* 829 F.2d at 1375; *see also Hall v. Cole,* 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973) ("[T]he underlying rationale of 'fee shifting' is, of course, punitive, and the essential element in triggering the award of fees is therefore the existence of 'bad faith' on the part of the unsuccessful litigant."); *Colombrito,* 764 F.2d at 133 (holding that, in order to award attorneys' fees under the bad faith

exception, a district court must find that the plaintiff's suit was both "entirely without color and . . . asserted wantonly, for purposes of harassment or delay, or for other improper reasons. . . . Neither meritlessness alone . . . nor improper motives alone . . . will suffice.").

In the present case, the district court asserted that Big Yank's claim was "completely meritless" and that Big Yank had litigated its claims in bad faith, but did not make any findings of fact to this effect. The only support for this conclusion given by the district court was its belief that Big Yank's former counsel had "churned a worthless claim to the detriment of their client." However, the court never held any hearings as to the conduct of Big Yank's counsel, referred to any evidence supporting its belief, or stated how this "churning" prejudiced Liberty Mutual. For example, the court never identified what actions of Big Yank's counsel were inappropriate, such as the unnecessary taking of discovery or the continuation of the suit solely for the purpose of harassment.

■ Although the district court felt that Big Yank's claim was meritless and was clearly displeased with the actions of its counsel, the bad faith exception requires that the district court make actual findings of fact that demonstrate that the claims were meritless, that counsel knew or should have known that the claims were meritless, *and* that the claims were pursued for an improper purpose. *See Smith,* 829 F.2d at 1375. Because the district court made no actual findings on these issues, it abused its discretion by ordering Big Yank to pay Liberty Mutual's attorneys' fees.[6]

■ Alternatively, Liberty Mutual argues that it is entitled to its attorneys' fees pursuant to Fed.R.Civ.P. 68. Rule 68 provides, in pertinent part:

[A] party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property . . . specified in the offer, with costs then accrued. . . . If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.

Liberty Mutual notes that, at the direction of the district court, both parties submitted offers of judgment. Liberty Mutual offered to settle Big Yank's claims against it for $200,000, but Big Yank refused the offer. Because Big Yank subsequently failed to obtain a judgment for more than $200,000, Liberty Mutual argues that it is entitled to recover its attorneys' fees under the express terms of Rule 68 as "costs incurred after the making of the offer." However, Liberty Mutual is not entitled to recover its attorneys' fees under this provision because attorneys' fees are not considered "costs" within the meaning of Rule 68 unless classified as such under a statute substantively at issue in the case. *See Marek v. Chesny,* 473 U.S. 1, 9, 105 S.Ct. 3012, 3016–17, 87 L.Ed.2d 1 (1985); *Zackaroff v. Koch Transfer Co.,* 862 F.2d 1263, 1265 (6th Cir.1988).

■ Liberty Mutual next argues that it is entitled to recover its attorneys' fees on the basis of contract law. Specifically, Liberty Mutual argues that each party submitted an offer of judgment with the expectation that the provisions of Rule 68 would shift attorneys' fees to the losing party. Even though Rule 68 itself does not apply to their offers, Liberty Mutual argues that the parties' expectations as to how Rule 68 applied to their case was sufficient to create an enforceable contract between them that shifts the payment of attorneys' fees to the losing party. Because Big Yank lost the suit against Liberty Mutual, Liberty Mutual argues that Big Yank is contractually obligated to pay its attorneys' fees. However, as the district court noted, an enforceable contract is not created unless the offer is *accepted* and there is actually a meeting of the minds as to the provisions of the alleged agreement. Be-

---

**6.** Although Big Yank states in its brief that the award of costs to Liberty Mutual should also be reversed, its legal argument relates solely to the award of attorneys' fees. Because "costs other than attorneys' fees shall be allowed as of course to the prevailing party" under Fed.R.Civ.P. 54(d)(1) and Big Yank has presented no legal argument for the reversal of that award, that portion of the district court's decision ($16,711.84) is affirmed.

cause Big Yank never accepted the terms of the alleged contract and the parties were, at best, uncertain as to the effect of their offers under Rule 68, there was no meeting of the minds and no enforceable agreement between them for the payment of attorneys' fees.

Accordingly, the decision of the district court awarding Liberty Mutual its attorneys' fees is reversed. The case is remanded to the district court where, after an opportunity for briefing by the parties, the court should make findings of fact as to whether Big Yank's claims were meritless; whether counsel knew or should have known that the claims were meritless; and whether Big Yank pursued those claims for an improper purpose.

## V.

We hereby **AFFIRM** the district court's grant of summary judgment in favor of Liberty Mutual, **REVERSE** the award of attorneys' fees, and **REMAND** the case to the district court.