PER CURIAM:
 

 BACKGROUND
 

 Defendant-appellant Liberty Mutual Life Insurance Company (“Liberty”) appeals from the United States District Court for the Southern District of New York (Peter K. Leisure,
 
 District
 
 Judge), affirming an order of the United States Bankruptcy Court for the Southern District of New York discharging a sanction award from the United States District Court for the Eastern District of Kentucky (Henry R. Wilhoit, Jr.,
 
 District
 
 Judge).
 

 Liberty was the worker’s compensation carrier for plaintiff-appellee Big Yank Corporation (“Big Yank”), a manufacturer of blue jeans. After Big Yank closed its plant in Wewoka, Oklahoma, many of the workers filed worker’s compensation claims with Liberty. Liberty paid the claims and notified Big Yank that pursuant to the insurance contract (1) Big Yank would be charged retrospective premiums for the claims paid and (2) Big Yank would be required to find coverage elsewhere in the future. Liberty paid out over $4,000,000 in claims that it could not recoup in subrogation from Big Yank.
 

 In 1992, accusing Liberty of bad faith in the processing and settling of the claims, Big Yank filed suit for breach of contract, negligent claims handling, and bad faith in Kentucky state court. The action was later removed to the United States District Court for the Eastern District of Kentucky (“Kentucky Action”).
 

 The Kentucky district court ordered the parties to make Offers of Judgment (“offers”) pursuant to Fed.R.Civ.P. 68. Rule 68 provides in pertinent part that:
 

 [A] party defending against a claim may serve upon the adverse party an offer to
 
 *327
 
 allow judgment to be taken against the defending party for the money or property... specified in the offer, with costs then accrued_ If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer.
 

 At the direction of Judge Wilhoit, these offers were different from typical Rule 68 offers because they (1) were made by both sides; (2) included claims for any attorneys’ fees (in addition to costs) incurred after rejection of the offers; and (3) were to take effect in the event either party obtained a judgment more favorable than its rejected offer. On September 15, 1993, the parties submitted their offers; Big Yank requested $600,000 and Liberty offered $200,000. The offers of judgment, which were open for ten days, were not accepted and Judge Wilhoit then scheduled the Kentucky Action for trial on April 11, 1995.
 

 In March of 1995, Judge Wilhoit granted summary judgment to Liberty ruling that “no reasonable jury could return a verdict in favor of plaintiff [Big Yank] on any of its claims.” Subsequently, Liberty filed a petition with the Kentucky district court for costs and attorneys’ fees incurred after September 15, 1993, the day the offers were submitted to that court, pursuant to Fed. R.Civ.P. 68, Local Rule 14, and a prior directive of the district court.
 

 On July 13, 1995, the Kentucky district court rejected Liberty’s request for attorneys’ fees based on Fed.R.Civ.P. 68 because, according to the court, “before an enforceable contract is created a valid offer must be
 
 accepted.” Big Yank Corp. v. Liberty Mut. Fire Ins. Co.,
 
 No. 92-401 (E.D.Ky. July 13, 1995) at 4 (emphasis in original). Since both parties had rejected the offers, the district court found that no enforceable contract was created.
 
 Id.
 
 However, the Kentucky district court granted Liberty costs in the amount of $16,711.84.
 

 Although the district court rejected.Liberty’s request for attorneys’ fees based on the offers, it awarded sanctions in the amount of attorneys’ fees on a completely different ground — bad faith. Finding that Big Yank “had asserted a truly desperate claim, completely meritless,”
 
 id.
 
 at 6, the district court awarded sanctions in the amount of $435,-640.57. The Kentucky court opined
 

 It is this Court’s conclusion that Big Yank did in fact litigate these claims in bad faith. From its inception, the Court felt that counsel for Big Yank had churned a worthless claim to the detriment of their client.
 

 Their insistence in pursuing the claim created a financial hardship on the plaintiff and pushed the expense of litigating this claim into the ‘realm of obscenity,’ as previously stated by the Court. Liberty Mutual should not likewise be detrimentally affected.
 

 Id.
 
 at 5-6. The district court granted the sanctions award based upon the fees expended between the time Big Yank rejected Liberty’s Offer of Judgment, September 25, 1993, and the date the district court granted Liberty’s motion for summary judgment, March 28, 1995.
 

 Subsequently, Big Yank appealed the summary judgment and sanctions award to the Sixth Circuit Court of Appeals. The Sixth Circuit affirmed the summary judgment motion for Liberty Mutual but reversed and remanded the district court’s sanctions award for further fact-finding.
 
 Big Yank Corp. v. Liberty Mut. Fire Ins. Co.,
 
 125 F.3d 308, 315 (6th Cir.1997).
 

 On September 24, 1993, while the Kentucky Action was in progress, Big Yank filed a Chapter 11 proceeding (“Bankruptcy proceeding”) in the United States Bankruptcy Court for the Southern District of New York (Arthur J. Gonzalez,
 
 Bankruptcy
 
 Judge). On August 8, 1994, a Second Amended Plan of Reorganization was confirmed in the Bankruptcy Court.
 

 In April of 1995, after the Kentucky district court granted Liberty’s motion for summary judgment, but before it denied Liberty’s motion for attorneys’ fees based on the exchange of offers, Liberty tendered its Proof of Claim for attorneys’ fees to the Bankruptcy Court under the assumption that it would recover the attorneys’ fees based on the fee shifting terms of the offers. The
 
 *328
 
 Bankruptcy Court in New York rejected the claim. Big Yank then filed an adversary proceeding in the Bankruptcy Court seeking a declaratory judgment that Liberty’s claim for costs and attorneys’ fees arose preconfir-mation and was discharged by confirmation of Big Yank’s reorganization plan.
 

 On April 9, 1996, the Bankruptcy Court found that although the Kentucky district court awarded sanctions on July 13, 1995, which was post-petition, the award was “within the fair contemplation of the parties” on August 18, 1993, the date the Kentucky district court ordered the parties to make offers. The Bankruptcy Court therefore held that the claim for sanctions arose pre-petition and preconfirmation and was therefore discharged in bankruptcy.
 
 In Re Water Valley Finishing, Inc.,
 
 No. 93 B 44780, Adversary Proceeding No. 96/8024A (U.S. Bankr.S.D.N.Y. Apr. 19, 1996).
 

 Liberty appealed this ruling to the United States District Court for the Southern District of New York (Peter K. Leisure,
 
 District Judge).
 
 The district court agreed with the Bankruptcy Court that “the claim was within the contemplation of the parties prepetition and preconfirmation,”
 
 Big Yank Corp. v. Liberty Mut. Fire Ins. Co.,
 
 203 B.R. 537, 541 (S.D.N.Y.1996), and affirmed the judgment in favor of Big Yank. This appeal followed.
 

 DISCUSSION
 

 The central issue in this case is whether Liberty’s claim for the sanctions award accrued before or after the date of confirmation of the bankruptcy plan. If the former, the obligation was discharged; if the latter, it was not. Liberty argues that its claim did not arise until July 13, 1995, when the district court
 
 sua sponte
 
 ordered sanctions. Big Yank contends that attorneys’ fees were within the contemplation of the parties prior to the bankruptcy plan confirmation and therefore were discharged by the confirmation.
 
 See
 
 11 U.S.C. § 1141(d)(1).
 

 In order to determine whether Liberty had a claim on the confirmation date it is necessary to define the term claim. The Bankruptcy Code itself states that a “claim” is a:
 

 right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.
 

 11 U.S.C. § 101(5). Under contract law, an “unmatured” or “contingent” claim “refer[s] to obligations that will become due upon the happening of a future event that was ‘within the actual or presumed contemplation of the parties at the time the original relationship between the parties was created.’”
 
 In re Chateaugay Corp.,
 
 944 F.2d 997, 1004 (2d Cir.1991) (quoting
 
 In re All Media Properties, Inc.,
 
 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), aff
 
 'd mem.,
 
 646 F.2d 193 (5th Cir.1981)). This case does not fall under contract law, raising the question whether a claim for yet-to-be-awarded sanctions can be deemed to arise prepetition if the possibility of the claim was within the contemplation of the parties. We need not decide this question, however, because we disagree with the courts below that the sanctions award was within the parties’ contemplation before the bankruptcy plan was confirmed.
 

 First, the parties could not reasonably have expected that attorneys’ fees would be awarded to the prevailing party pursuant to Fed.R.Civ.P. 68 because that rule only provides for an award of costs and not for an award of attorneys’ fees.
 
 See
 
 Fed.R.Civ.P. 68 (“If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the
 
 costs
 
 incurred after the making of the offer.”) (emphasis added). The Kentucky district court stated that it would look to the unsuccessful party to pay attorneys’ fees. However, the law is clear that the court does not have the power under Rule 68 to award attorneys’ fees and that each party is responsible for bearing its own attorneys’ fees.
 
 See Colombrito v. Kelly,
 
 764 F.2d 122, 133 (2d Cir.1985). Also, Rule 68 applies only when offers are made by the defendant and a judgment is obtained by the plaintiff.
 
 See Delta Air Lines, Inc. v. August,
 
 450 U.S. 346, 350, 101 S.Ct. 1146, 1149, 67 L.Ed.2d 287 (1981). Because the defendant obtained judgment in its favor, Rule 68 would be inapplicable to this case. Thus, based upon events prior to confirmation, it was unreasonable to believe that attorneys’ fees would be awarded in derogation of law.
 

 
 *329
 
 , Moreover, it is plain to us, as it was to Judge Wilhoit, that the parties never agreed to the offers and that no enforceable contract to pay attorneys’ fees was formed. The Kentucky district court rejected the offers as a basis for attorneys’ fees specifically stating that it would not rely on the offers because they were never accepted and therefore “no contract was created between the parties.”
 
 Big Yank Corp.,
 
 No. 92-401, at 4. It was only on July 13, 1995, that the Kentucky district court, after finding that attorneys’ fees could not be awarded on the basis of contract, decided to award sanctions in the amount of Liberty’s attorneys’ fees against Big Yank for conducting the litigation in bad faith. We conclude from the record that the parties could not have anticipated these sanctions prior to confirmation. At the time Big Yank’s Chapter 11 plan was confirmed, Liberty could not reasonably have foreseen that one year later Judge Wilhoit would,
 
 sua sponte,
 
 impose sanctions. In fact, until the district court issued its July 13, 1995 order awarding sanctions based on Big Yank’s bad faith in litigating these claims, there had not even been an allegation of bad faith. Our conclusion receives further support from the Sixth Circuit’s recent decision to reverse the sanctions award and remand for additional findings of fact on the basis that Judge Wil-hoit abused his discretion by awarding sanctions without holding further hearings and making the necessary findings that Big Yank’s claims were meritless, that Big Yank’s counsel knew or should have known that the claims were meritless, and that Big Yank pursued its claims for an improper purpose.
 
 See Big Yank Corp.,
 
 125 F.3d at 310. There is simply no basis in the record upon which one could conclude that Liberty could have contemplated the
 
 sua sponte
 
 imposition of sanctions in its favor, the merits of which are still in doubt, over a year before the award was made.
 

 CONCLUSION
 

 For the foregoing reasons, the judgment of the district court is reversed and remanded.