**In re Ernest Eugene HARBAUGH,**
**Debtor(s).**

No. 13–53842.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Signed April 15, 2014.

Entered April 16, 2014.

Mina Nami Khorrami, Mina Nami Khorrami, LLC, Columbus, OH, for Debtor.

Alex J. Pomerants, Columbus, OH, for Respondent.

### OPINION AND ORDER ON MOTION FOR SANCTIONS

C. KATHRYN PRESTON, Bankruptcy Judge.

This matter came on for hearing before the Court on March 21, 2014, upon the Motion to Enforce Settlement Agreement and for Sanctions (Doc # 66) filed on behalf of Debtor Ernest Eugene Harbaugh (hereinafter, "Debtor"), the objection thereto (Doc # 76) filed by Deborah J. Harbaugh (hereinafter, "Ms.Harbaugh") and another objection thereto filed on behalf of Ms. Harbaugh by her counsel. Present at the hearing were Mina Nami Khorrami representing Debtor, and Kenneth M. Richards representing Ms. Harbaugh. Also present were Debtor and Ms. Harbaugh. At the conclusion of the hearing, the Court granted the Motion to the extent that it sought enforcement of a settlement agreement, and a separate order will be entered memorializing the Court's order. The Court took under advisement the request for sanctions.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and General Order 05–02 entered by the Unit-

ed States District Court for the Southern District of Ohio, referring all bankruptcy matters to this Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (L) and (O).

This is the latest skirmish in a long running battle between Debtor and his former wife Ms. Harbaugh. The facts underlying this latest dispute may be summarized as follows: Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on May 10, 2013. Ms. Harbaugh was listed as a creditor and duly notified of the bankruptcy case. In due course, Debtor proposed a Chapter 13 Plan (hereinafter, the "Plan"). Ms. Harbaugh objected to confirmation of the Plan (Doc. # 19) on several grounds: that Debtor has possession of certain marital assets that were to be divided in accordance with the divorce decree, that Debtor failed to accurately disclose his income and living expenses in his schedules, and that Debtor has failed to pay his domestic support obligations to her. The objection also requested that this Court determine that the bankruptcy court proceedings would not "interfere or delay ... proceedings which are scheduled" in the domestic court or that court's "ability to enter further orders".[1]

Ms. Harbaugh filed four proofs of claim: (a) Claim # 6–1 in the amount of $153,196.99; (b) Claim # 7–1 in the amount of $22,996.01, (c) Claim # 8–1 in the amount of $30,025.00, and (d) Claim # 9–1, stating "amount to be determined." All of the claims arise from domestic court

proceedings in connection with the parties' divorce, property settlement and Debtor's spousal support obligations. Debtor objected to all of Ms. Harbaugh's proofs of claim (Docs. # 37, 38, 39 and 40).

Trial was scheduled to be held on December 2, 2013, on Ms. Harbaugh's objection to confirmation of the Plan and all of Debtor's objections to Ms. Harbaugh's claims. Shortly prior to trial, the parties notified the Court that the disputes had been settled. In light of the contentious history between the parties, the Court requested that counsel state the terms of the settlement on the record, which they did. Counsel represented that all disputes between the parties in the bankruptcy court were resolved and would be the subject of an agreed order to be tendered to the Court. Counsel acknowledged that there may be certain lingering issues before the domestic court which remain outstanding, and there was no intention to address those in the agreed order, but if the parties wanted or needed to resolve those issues, they would await the conclusion of the bankruptcy proceeding.

In early December, counsel for Debtor tendered to Ms. Harbaugh's counsel a proposed agreed order; Ms. Harbaugh's attorney transmitted it to Ms. Harbaugh. Ms. Harbaugh expressed concern over certain language of the document, but then communications between Ms. Harbaugh and her counsel ceased until late February 2014, without Ms. Harbaugh specifying to her counsel what her concerns were. Counsel for Debtor reached out to counsel

1. In the last paragraph of Ms. Harbaugh's objection, she requested relief from the automatic stay to pursue actions pending in the domestic court, but inasmuch as she did not frame her request as a motion as required by Federal Rule of Bankruptcy Procedure 9013 ("A request for an order ... shall be by written motion ...."), she did not request relief from the stay in the title or introductory para-

graph of her objection, she did not articulate a basis for relief from stay pursuant to § 362(d), and she did not attach or include the 21 day notice which is required under the Local Bankruptcy Rules, the Court announced at a previous hearing that it would treat the filing solely as an objection to confirmation.

for Ms. Harbaugh several times, inquiring about the status of the agreed order, but was unable to get any meaningful response. During that time period, Ms. Harbaugh experienced some health concerns and/or problems that demanded her attention, although she was not rendered physically or mentally impaired by her malady or medical treatment, nor required to take medication that impaired her judgment. She believes that she was depressed during this time, but did not seek medical attention for that condition and was not taking medication for it.

Although Ms. Harbaugh declined to sign the proposed order and would not authorize her counsel to do so, and was not in contact with her counsel, she authored a letter to the Chapter 13 Trustee, complaining of issues that she raised or should have raised in her objection to confirmation or should have raised in other timely motion practice. Debtor's counsel was required to expend time to research and draft a response, at significant cost to Debtor in legal fees.

Finally, unable to submit an agreed order to the Court as required by the local rules and the Court, and because the issues presented impediments to confirmation of the Plan, counsel for Debtor was forced to file a motion to enforce the settlement. Only after the motion was filed did Ms. Harbaugh reestablish contact with her counsel on or about February 25, 2014. Ms. Harbaugh's counsel filed a response on her behalf, but Ms. Harbaugh also filed her own response, in which she indicated dissatisfaction with the settlement and articulated more complaints about Debtor and the case that she should have raised in her objection to confirmation or some other motion. Neither response articulated a defense to the motion.

At the hearing, counsel for Debtor and counsel for Ms. Harbaugh both confirmed that the agreed order crafted by Debtor's counsel accurately memorialized the agreement between the parties. After some discussion about the parameters of the agreement and Ms. Harbaugh's concerns, the Court granted the motion to enforce the settlement. At the Court's request, counsel for Debtor submitted the draft agreed order, and it has been entered by the Court.[2]

Inasmuch as counsel for Debtor has been compelled to expend time pursuing finalization of the agreed order, defending Ms. Harbaugh's new attacks on Debtor, and filing and prosecuting the motion to enforce the settlement, counsel is seeking an award of attorney's fees from Ms. Harbaugh.

As the United States Supreme Court has noted, a court may assess attorney's fees under its inherent powers "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal quotation marks and citations omitted). It can be appropriate as well to award fees when the conduct is "tantamount to bad faith[.]" *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). The Sixth Circuit has adopted a three-part

2. The Court did request additional language to be added to the agreed order to make clear that certain other matters could be pursued by Ms. Harbaugh, which did not conflict with or implicate the bankruptcy case or the Bankruptcy Code. Although the language was responsive to one of Ms. Harbaugh's concerns, the language was not necessary in order to augment the settlement or to more accurately recite the settlement between the parties, but rather was added merely for the convenience of Ms. Harbaugh and the Court. Debtor had no objection to inclusion of the language.

test to determine the propriety of imposition of sanctions under the bad faith standard. *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.,* 125 F.3d 308, 313 (6th Cir. 1997). The Court must find that [1] that the action was meritless, [2] that the party knew or should have known this, and [3] that the motive for the action was for an improper purpose such as harassment. *See id.*

 Standing alone, the mere fact that an action is without merit is not tantamount to bad faith. *Big Yank,* 125 F.3d at 314 (internal quotation marks omitted). The court must find something more than that the party undertook a meritless course of action. The Sixth Circuit Court of Appeals has observed that

> Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose. . . .

*BDT Prods., Inc. v. Lexmark Int'l, Inc.,* 602 F.3d 742, 754 (6th Cir.2010).

In the instant matter, Ms. Harbaugh failed to consummate the settlement with Debtor without just cause. She has not suggested that her counsel acted without authority or beyond the scope of his authority. She does not refute that she agreed to the settlement terms. She pleads illness and depression. Indeed, she has been under treatment for her illnesses, and her doctors recommended that she avoid stress. But Ms. Harbaugh conceded that she was not incapable of communicating with her counsel. She did not consult with medical providers or seek treatment of the depression, and does not indicate that she was incapable of caring for herself and managing her personal affairs. If she had found her illness debilitating, Ms. Harbaugh could have explained this to her

counsel and requested additional time to review and consider the proposed agreed order. She did not do so, so the Court can only infer that the illness was not debilitating.

It appears to the Court that Ms. Harbaugh had second thoughts about her settlement. Despite her illness and depression, she was well enough to author a single spaced, three and a half page letter to the Chapter 13 Trustee complaining of issues that were or should have been brought up in her objection to confirmation or other papers. Typically, the Court would not take umbrage to a creditor communicating with the trustee, but a party in interest doesn't get two bites at the apple. Ms Harbaugh chose to assume an active role in this case by objecting to confirmation of Debtor's Plan. She then chose to settle her disputes with Debtor. She cannot then properly attempt to circumvent the settlement by raising the same issues via correspondence to the trustee. Then when confronted with Debtor's motion to enforce the settlement, rather than acting to bring the matter to a close, as would have been appropriate, Ms. Harbaugh authored a four page response to the motion in which she, again, discussed issues that were or should have been raised in her filings. Inasmuch as Ms. Harbaugh concedes that she agreed to the settlement, the Court finds that her failure to complete the settlement and her continuing attacks on Debtor despite the settlement were without merit or justification.

Ms. Harbaugh knew the allegations of her objection to confirmation—after all, she crafted the objection herself before she had retained counsel. She also knew that she had settled the objection. Ms. Harbaugh did not articulate or illustrate any justifiable or proper purpose for her conduct. Moreover, Ms. Harbaugh and Debtor have been in and out of court

numerous times, both in the Perry County (Ohio) Court of Common Pleas and in this Court. She understands the purpose and consequences of filing papers with the court system and the purpose and consequence of settling legal differences. Therefore, she knew that her failure to complete the settlement, and her actions raising the same issues to the trustee and to the Court, were *without merit or justification*.

Inasmuch as she had interposed the objection to confirmation in an effort to prevent confirmation of Debtor's Plan, Ms. Harbaugh's failure to complete the settlement delayed the progress of Debtor's case. Moreover, she intended her letter to the trustee to evoke an investigation by the trustee, and she had to be aware that Debtor would have an opportunity to defend her allegations and would do so. This necessarily resulted in Debtor incurring attorney's fees, a foreseeable consequence of her actions.

It is clear from the record that Debtor and Ms. Harbaugh have been dueling for many years. But Ms. Harbaugh agreed to settle the disputes joined in this Court. The Court can neither discern nor envision any purpose to be served by Ms. Harbaugh's actions other than to continue the battle, circumvent the settlement, delay progress of this case, and/or harass Debtor. And she failed to articulate or illustrate any justifiable or proper purpose for her conduct. Thus, the Court is compelled to find that Ms. Harbaugh's motives in failing to complete the settlement and attempting to re-raise issues with the trustee and the Court were for an improper purpose. It is, therefore, appropriate to grant an award of attorneys' fees to counsel for Debtor. Counsel for Debtor has submitted to the Court an itemization of time expended and a calculation of attorneys' fees based thereon. The Court having reviewed the itemization, finds that a reasonable fee for time expended is $3527.00.[3]

Accordingly, it is ORDERED that Debtor's Motion seeking sanctions for Ms. Harbaugh's conduct is GRANTED. Ms. Harbaugh shall pay to counsel for Debtor, Mina Nami Khorrami, 115 West Main Street, Suite LL–50, Columbus, OH 43215, the sum of $3527.00 within 10 days of the date of entry of this order.

IT IS SO ORDERED.

---

**3.** In the itemization, the entry for January 1, 2014, sets forth services described as "various email correspondences and telephone conferences." Such bundling of services lacks the specificity required to be compensated. Additionally, the description of services in the entry for March 12, 2014, does not appear to be directly related to the motion for enforcement of the settlement or Ms. Harbaugh's violation of the settlement.