NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0560n.06

No. 21-3335

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| BRETT M. MCCLAFFERTY, | ) | **FILED** |
| Plaintiff-Appellant, | ) | Dec 03, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | |
| | ) | |
| PORTAGE COUNTY, OHIO BOARD OF COMMISSIONERS; DAVID W. DOAK, Individually and in his official capacity as the Sheriff of the Portage County, Ohio Sheriff's Office; DALE KELLY, Individually and in his official capacity as the Chief Deputy of the Portage County, Ohio Sheriff's Office; DANIEL BURNS, Individually and in his official capacity as the former Jail Administrator of the Portage County, Ohio Jail; BRYAN MORGENSTERN, Individually and in his official capacity as a Sergeant of the Portage County, Ohio Jail; WILLIAM BURNS, Individually and in his official capacity as an Officer of the Portage County, Ohio Jail; CORY GERMANI, Individually and in his official capacity as an Officer of the Portage County, Ohio Jail; MICHAEL BURDA, Individually and in his official capacity as the Inmate Services Coordinator of the Portage County, Ohio Jail; AMY BEANS, Individually and in her official capacity as a Staff Member of the Portage County, Ohio Jail; UNKNOWN DEFENDANTS, Individually and in their official capacity at Portage County, Ohio Sheriff's Office; UNKNOWN NURSING DEFENDANTS, In their individual and official capacities with Correct Care Solutions, LLC; and UNKNOWN MENTAL HEALTH SERVICES DEFENDANTS, In their individual and official capacities with Coleman Professional Services, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| Defendants-Appellees, | ) | |
| | ) | |
| COLEMAN PROFESSIONAL SERVICES; DR. BRIAN WELSH, Individually and in his official capacity as the Director of Coleman Professional Services, | ) ) ) | |
| Defendants. | ) ) | |

Before: COLE, KETHLEDGE, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Plaintiff-Appellant Brett McClafferty appeals the dismissal of his complaint with prejudice and the award of attorneys' fees and costs as sanctions for filing a complaint in bad faith and for improper purposes. He also appeals the dismissal of his complaint with prejudice pursuant to 28 U.S.C. § 1915 for misrepresenting his pauper status. We **AFFIRM** the district court's dismissal of the complaint with prejudice, **VACATE** its award of attorneys' fees and costs, and **REMAND** for further proceedings.

## I.

### A.

On September 25, 2019, while serving a three-year term of imprisonment at Lake Erie Correctional Institution, McClafferty, acting pro se, filed an eleven-count complaint against the Portage County Board of Commissioners, the Portage County Sheriff and Chief Deputy, and staff members of the Portage County Jail (collectively the "Portage County Defendants") for violating his constitutional rights while he was being held as a pretrial detainee at the Portage County Jail in 2017 and 2018. He also asserted claims against Coleman Professional Services, Dr. Brian Welsh, the director of Coleman Professional Services, and Correct Care Solutions, LLC, all providers of mental-health and medical services to the Portage County Jail.[1]

McClafferty's complaint alleged that on October 20, 2017, in retaliation for his refusal to ingest anti-psychotic medications prescribed to him by Dr. Welsh, Defendants William Burns and Bryan Morgenstern, employees of the Portage County Jail, performed a "cell extraction" in which they dragged him down the hallway, hyperextended his rotator cuffs, and dislocated his left shoulder. He also alleged that he was forced to lie naked on a concrete floor in a cell kept at 50

---

[1] The district court granted Correct Care Solutions, LLC's motion to dismiss on September 29, 2020. After filing this appeal, McClafferty moved to voluntarily dismiss Coleman Professional Services and Dr. Welsh; we granted the motion on May 5, 2021. Only the claims against the Portage County Defendants remain.

degrees Fahrenheit for seven hours, during which time he was not provided any food or water. McClafferty further claimed that he was pepper sprayed on at least two occasions while confined in the cell. According to McClafferty, he was then taken to a local hospital for treatment.

McClafferty further alleged that on March 29, 2018, he again refused to take medication prescribed by Dr. Welsh. In response, Burns and another jail official performed a cell extraction in which Burns "assaulted" him from behind and shoved him violently toward the exit. When McClafferty stumbled because Burns stepped on his sandals, Burns told him to stop resisting and yanked the handcuffs higher until he hyperextended McClafferty's already injured shoulder.

These incidents form the basis of McClafferty's claims of excessive force and torture. McClafferty additionally alleged that jail staff were deliberately indifferent to his medical needs, denied him access to an attorney, covered up the use of excessive force and torture against him, and violated the Racketeer Influenced and Corrupt Organizations Act (RICO). McClafferty also asserted a state-law claim for intentional infliction of emotional distress for refusing to provide medications prescribed by his primary-care physician, and a state-law claim for indemnification against the Portage County Board of Commissioners.

Along with his complaint, McClafferty filed a motion to proceed in forma pauperis. In the motion, McClafferty listed "$0" or "n/a" as the average monthly income he earned in the previous twelve months and could expect to earn the following month. He similarly represented that he had no assets or expenses, indicating only that "Goodfellas Roofing" owed him $144,000. McClafferty attached an order of discharge from a bankruptcy proceeding in the Northern District of Ohio dated September 21, 2017. Separately, McClafferty included an affidavit in which he stated that he was not presently employed, that he had not received money from any sources in the past twelve months, and that he did not have any cash or money in checking or savings accounts. McClafferty

also attached his prisoner account statement from the Lake Erie Correctional Institution. The district court granted McClafferty's IFP motion on January 31, 2020.

After McClafferty filed his complaint, the parties engaged in a flurry of motions practice. As relevant here, on December 18, 2020, the Portage County Defendants filed a motion for sanctions seeking dismissal of McClafferty's complaint with prejudice, attorneys' fees and costs, designation of McClafferty as a vexatious litigant, and a permanent injunction denying McClafferty in forma pauperis status and precluding him from pursuing litigation against the Portage County Board of Commissioners, its elected officials, and current and former employees without first obtaining leave of court.[2] In their motion, the Portage County Defendants argued that, since his sentencing,

> McClafferty has been on a mission of revenge against Portage County . . . McClafferty has been a puppeteer from prison, using the prison's JPAY [communications] system, and licit and illicit prison telephone calls to engage a network of friends and like-minded criminal acquaintances to further his scheme to punish Portage County for what he considers to be an unfair prison term, and to accomplish his "goal [which] is to make more money in prison than anybody else in the history of the Ohio state penal system . . . ."

R.105, PID 1388 (citation and footnote omitted) (first alteration added). More specifically, they argued that McClafferty took the following non-exhaustive list of actions in pursuit of his cause:

1. solicited complaints of abuse from other former Portage County Jail detainees in order to generate media exposure and settlement pressure for his own case;
2. directed friends and acquaintances to send emails and make phone calls on his behalf to the media detailing his accounts of alleged abuse;
3. notified the media about a "very serious whistleblower complaint" against the Portage County Sheriff, which McClafferty somehow knew about a mere two days after the complaint was drafted and for which he obtained a redacted copy even before the recipients did;

---

[2] Coleman Professional Services and Dr. Welsh joined in the Portage County Defendants' motion for sanctions, and additionally requested that the court sanction McClafferty pursuant to Rule 37 of the Federal Rules of Civil Procedure by striking all pleadings directed against them. In the same motion, they also moved for judgment on the pleadings and for McClafferty to be designated a vexatious litigator as to his state-law claims pursuant to Ohio Rev. Code § 2323.52. The district court granted the motion insofar as Coleman and Dr. Welsh sought the same relief sought by the Portage County Defendants, but denied their request for sanctions under Rule 37.

4. submitted a false complaint of abuse on behalf of a fellow inmate to the Ohio Civil Rights Commission; and

5. used other individuals as "strawmen" to file a mandamus action and taxpayer action against Portage County

The Portage County Defendants also noted that McClafferty refused to sign a blank medical authorization and answer even the most basic discovery questions about his claims. The Portage County Defendants argued that McClafferty's actions warranted the sanction of dismissal because he had been evasive and obstructive in discovery; lied to the court about his role in the strawmen lawsuits and lied about other matters in his discovery responses and court filings; and fabricated and presented false evidence to the court, including by asking the court to take judicial notice of the "anonymous" whistleblower complaint to the Ohio Inspector General.

The Portage County Defendants separately urged the district court to dismiss McClafferty's complaint with prejudice pursuant to 28 U.S.C. § 1915 for misrepresenting his pauper status. They noted, for example, that despite representing that he had no assets or income, McClafferty was overheard in recorded telephone conversations telling friends and family that he had adequate financial resources. The Portage County Defendants also noted that, although McClafferty was discharged from bankruptcy on September 21, 2017, he represented in a filing to another court[3] that he had transferred $655,000 worth of Bitcoin to an asset manager a mere nine days before that discharge. McClafferty also represented in the same filing that the Bitcoin investment had been liquidated on September 19, 2018, and that $1,265,000 in proceeds had been deposited in an escrow account for his benefit in the U.S. Virgin Islands.

---

[3] The case is *McClafferty v. Greentree Equity Partners*, No. 2020CV00011 (Portage Cnty. Ct. Common Pleas Jan. 7, 2020). McClafferty's complaint alleged that he transferred $655,000 worth of Bitcoin to Greentree pursuant to an Asset Management Agreement; that Greentree later liquidated its holdings of Bitcoin, including McClafferty's position; and that the $1,265,000 Greentree attributed to McClafferty's Bitcoin position was calculated based on an incorrect liquidation date and should have been $3,934,000.

Finally, the Portage County Defendants argued that even if McClafferty was lying to others about his financial status, there was no doubt that his parents had funded his lifestyle in prison by providing funds to purchase goods from the commissary, as well as for Jpay media credits and other expenses, and that their ability to pay should be considered when determining McClafferty's pauper status.

**B.**

On March 30, 2021, in an omnibus Memorandum of Opinion and Order, the district court resolved seventeen pending motions, including the Portage County Defendants' motion for sanctions of dismissal. The court granted in part the motion for sanctions pursuant to its "inherent power to sanction litigants for conduct that constitutes an abuse of the judicial process." R.119, PID 1712. It agreed that McClafferty had been "evasive and obstructive in discovery," noting his refusal to sign medical authorizations and answer basic questions about his claims. R.119, PID 1713–14.

The district court likewise found that McClafferty had "outright lied to the Court when it suit[ed] him." R.119, PID 1715. It found that he had deceived the court by, among other things, representing that one of his "strawmen" had initiated the taxpayer lawsuit on her own accord. The court further found that McClafferty had "abused the administrative and judicial systems to advance his own agenda against Portage County," including by notifying the media of the "anonymous" whistleblower complaint and enlisting strawmen to file various lawsuits on his behalf. R.119, PID 1716–17. The court additionally found that McClafferty had submitted false evidence to the court by requesting that it take judicial notice of the whistleblower complaint. McClafferty's "pervasive misconduct," the court stated, warranted the sanction of dismissal. R.119, PID 1716, 1718. Finally, it determined that there was clear and convincing evidence that

McClafferty filed this action in bad faith and for improper purposes, warranting the award of attorneys' fees and costs to the Portage County Defendants. Nevertheless, it declined to designate McClafferty a vexatious litigant "in light of all of the proceedings in the record." R.119, PID 1720.

The district court also exercised its discretion to dismiss the complaint with prejudice on the ground that McClafferty had misrepresented his financial status in his application to proceed in forma pauperis. It observed that McClafferty had told his friends and family in multiple recorded telephone calls from jail that he had "plenty of money." R.119, PID 1723–27. Similarly, it noted that McClafferty's representations in the *Greentree* case regarding his transfer of Bitcoin assets to his asset manager, and the release of the liquidated assets to him from escrow as of February 27, 2020, contradicted his representations in his IFP application that he did not have "Other Assets." McClafferty's misrepresentations about his financial situation, the court stated, "supports a determination that his allegation of poverty was blatantly untrue." R.119, PID 1727. Finally, the court found that McClafferty's prisoner account statement "leaves no doubt that his parents funded his lifestyle while he was incarcerated," R.119, PID 1728, and that he had more than enough funds at his disposal to pay the $350 filing fee.

## II.

### A. Dismissal with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A).

We begin with the district court's dismissal of McClafferty's complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(A). Section 1915(e)(2)(A) of Title 28 provides in relevant part that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue." 28 U.S.C. § 1915(e)(2)(A); *see also Redd v. Redmon*, No. 99-6001, 2000 WL 658291, at *1 (6th Cir. May 9, 2000). A district court may dismiss a complaint with or without prejudice if a

plaintiff misrepresents his pauper status. *See Ojose v. Youngstown State Univ.*, No. 19-3221, 2019 WL 8301664, at *2 (6th Cir. Dec. 18, 2019); *see also Reyes v. Fishel*, 996 F.3d 420, 425 (7th Cir. 2021) ("Dismissal with prejudice is a permissible sanction where a prisoner has made an untrue allegation of poverty."). Our cases have held that we review the dismissal of a complaint pursuant to § 1915(e)(2)(A) de novo.[4] *See McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007); *see also Ojose*, 2019 WL 8301664, at *2; *Redd*, 2000 WL 658291, at *1.

As recounted by the district court, despite being discharged from bankruptcy on September 21, 2017, McClafferty represented in a filing in the *Greentree* case that approximately a week before the discharge, he had transferred $655,000 worth of Bitcoin to his asset manager. He also represented in the same case that on October 15, 2018, less than a year before filing this case, his Bitcoin investment had been liquidated and the $1,265,000 in proceeds transferred to an escrow account in the U.S. Virgin Islands for his benefit. McClafferty nevertheless filed an IFP application representing that he had no assets.

On appeal, McClafferty argues that he did not have access to the Bitcoin proceeds of sale at the time he filed his complaint in this matter because they were in escrow and were the subject of litigation; only in 2020, when the *Greentree* case settled, did the funds become available to him. He further contends that it would not have mattered if he had listed the *Greentree* case and

---

[4] The de novo standard of review for dismissals pursuant to § 1915(e)(2)(A) comes from *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997), but we recognize that *McGore* did not involve a dismissal pursuant to § 1915(e)(2)(A), which is the particular provision of the in forma pauperis statute at issue in this case. *See McGore*, 114 F.3d at 603–04, 613. *Ojose* and *Redd*, two unpublished cases that applied the de novo standard of review to dismissals pursuant to § 1915(e)(2)(A), refer to *McGore*. *See Ojose*, 2019 WL 8301664, at *2; *Redd*, 2000 WL 658291, at *1. Other courts have held that the factual determination whether a plaintiff's allegations of poverty are untrue is reviewed for clear error. *See, e.g.*, *Reyes*, 996 F.3d at 423–24 (7th Cir. 2021); *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 308 (7th Cir. 2002). In any case, we apply the standard of review most favorable to McClafferty, de novo review.

escrowed funds on his IFP application because he already listed that he was owed $155,000 by Goodfellas Roofing in a separate lawsuit and he was still granted IFP status.

We are not persuaded by these arguments. The IFP application form clearly required McClafferty to list "every person, business or organization owing" him money and the amount owed. R.2, PID 83. The application form also required McClafferty to list any assets he owned and their values, and any money contained in "checking or savings accounts or in any other financial institution." R.2, PID 82. The district court therefore reasonably concluded that McClafferty intentionally omitted the information about the proceeds from his Bitcoin investment.

Additionally, McClafferty does not address the substance of numerous telephone conversations he had *while in prison* in which he represented that he had expendable income. As documented by the district court in greater detail, McClafferty, among other things:

1. Told a friend, "Daddy actually put a lot of money, away, okay? Just . . . I'm gonna be alright, right?"
2. Told Austin Frederick: "I don't know if 'G' told you, but I've got a lot of money, man. I'm not saying that bragadociously, but I made a lotta money in my life, right? Listen, I have no problem putting $5,000 or $10,000 into a targeted Facebook campaign . . . ."
3. Concerned that a state court had denied him IFP status in one of his "straw man" actions, McClafferty assured Austin Frederick that he would pay the court costs if he had to because "[t]hat's [$318.10 in court costs] a night at the bar, dude, no big deal."
4. Told "Boog," McClafferty's former bunkmate, that he would "love my Escalade dude . . . I've got [six] televisions in the fucking Escalade, dude."

R.119, PID 1725–27. Thus, McClafferty's own recorded telephone conversations and representations regarding his Bitcoin assets suggest that his allegation of poverty was simply not true.

McClafferty also contends that "[t]here is no legal requirement to be truthful in jail calls or bunk discussions." Appellant Br. at 9. But even if McClafferty was lying to his friends about his financial status, his family nonetheless provided at least some of the funds he needed to make purchases from the commissary, pay for copying and mailing expenses, acquire Jpay credits, and

make other expenditures. Additionally, as the district court noted, McClafferty's father posted a $5,000 cash bond on his behalf in a separate criminal action in February 2020. McClafferty also "made regular calls to his mom asking her to put anywhere from $10 - $100 on his various prison accounts for commissary, Jpay media, copying and mailing expenses, etc." R.119, PID 1729. In light of this evidence, the district court concluded that "[m]oney flowed in regularly to [McClafferty]'s accounts even before he filed the case at bar." R.119, PID 1729.

We agree that McClafferty had sufficient financial resources to pay the full filing fee, particularly when considering his parents' financial support. *See Sellers v. United States*, 881 F.2d 1061, 1063 (11th Cir. 1989) (per curiam) (funds "derived from family sources" are relevant to IFP determination); *Williams v. Estelle*, 681 F.2d 946, 947 (5th Cir. 1982) (affirming denial of IFP application where inmate, despite having only $27.40 in his inmate trust account, represented in affidavit that he received approximately $360 per year from his family).

For these reasons, we conclude that the district court did not err in dismissing McClafferty's complaint with prejudice for misrepresenting his pauper status.

### B. Dismissal with prejudice for bad-faith misconduct.

Having concluded that the district court did not err in dismissing McClafferty's complaint with prejudice for misrepresenting his pauper status, we need not address McClafferty's argument that the district court erred in dismissing his complaint with prejudice for bad-faith misconduct.

### C. The award of attorneys' fees and costs

In addition to dismissing the complaint with prejudice for McClafferty's misrepresentation of his pauper status, the district court assessed attorneys' fees and costs against McClafferty under its inherent powers. "The district court has the inherent authority to award fees when a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons." *First Bank of Marietta v.*

*Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002) (internal quotations omitted) (quoting *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997)). "In order to award attorney fees under this bad faith exception, a district court must find that 'the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (quoting *Big Yank Corp.*, 125 F.3d at 313).

"We review a district court's imposition of sanctions under its inherent powers for abuse of discretion." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). "A court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *James v. Caterpillar, Inc.*, 824 F. App'x 374, 377 (6th Cir. 2020) (quoting *Jones v. Ill. Cent. R.R. Co.*, 617 F.3d 843, 850 (6th Cir. 2010)). Alternatively, we may find an abuse of discretion where we have a "definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Fharmacy Records v. Nassar*, 379 F. App'x 522, 523 (6th Cir. 2010) (quoting *Gaeth v. Hartford Life Ins. Co.*, 538 F.3d 524, 529 (6th Cir. 2008)).

McClafferty argues that the district court erred in awarding attorneys' fees and costs because the Portage County Defendants were not prevailing parties, and because such an "extraordinary action" was not warranted in this case. But we need not address those arguments here because, although the district court expressly concluded that McClafferty had "filed the case at bar in bad faith and for improper purposes," R.119, PID 1719, it failed to "make actual findings of fact that demonstrate that the claims were meritless, [and] that [McClafferty] knew or should have known that the claims were meritless." *Big Yank Corp.*, 125 F.3d at 314.

The district court's recitation of the facts and procedural history of this case at the outset of its opinion suggests that it viewed McClafferty's claims as meritless, but it did not clearly so conclude. Indeed, the word "meritless" appears only twice in the district court's opinion, in its discussion of the legal standard for imposing an award of attorneys' fees as sanctions. But despite noting the correct legal standard for imposing an award of attorneys' fees as sanctions, the district court did not actually discuss the merits of McClafferty's claims. It concluded, in a single sentence, only that he had filed his complaint in bad faith and for improper purposes. Moreover, much of the factual background recounted by the district court concerns activities ancillary to the merits of this action—for example, McClafferty's efforts to drum up media coverage of his lawsuit.

The district court therefore abused its discretion in awarding the Portage County Defendants their attorneys' fees and costs without making sufficient findings to support the award.[5] Accordingly, we vacate the award and remand to the district court to make findings regarding whether McClafferty's claims are meritless, and whether McClafferty knew or should have known that his claims were meritless. *See Big Yank Corp.*, 125 F.3d at 315.

---

[5] Although the district court described McClafferty's claims as "frivolous and harassing," R.119, PID 1730, it did so only in the context of dismissing his complaint for misrepresenting his pauper status. Section 1915 of Title 28, titled "Proceedings in forma pauperis," directs the district court to dismiss a case if it determines at any time that "the allegation of poverty is untrue" or the action or appeal "is frivolous or malicious," among other reasons. *See* 28 U.S.C. § 1915(e)(2)(A), (B). Even if we determined that the district court had concluded that McClafferty's claims were meritless, it did not provide any analysis or reasoning to support its conclusion. *See First Bank of Marietta*, 307 F.3d at 521 (observing that "[t]he district court provided several reasons for its conclusion that First Bank's claim was without colorable basis."); *see also Big Yank Corp.*, 125 F.3d at 314 (holding that district court abused its discretion in awarding attorneys' fees and noting that "[i]n the present case, the district court asserted that Big Yank's claim was 'completely meritless' and that Big Yank had litigated its claims in bad faith, but did not make any findings of fact to this effect.").

**III.**

For the foregoing reasons, we **AFFIRM** the district court's dismissal of the complaint with prejudice, **VACATE** the award of attorneys' fees and costs, and **REMAND** for further proceedings.